### CAVANAGH v. JOHANNESSEN.

No. 5637.  Opinion Filed November 2, 1915,

On Rehearing March 21, 1916.

Second Petition for Rehearing Denied April 11, 1916.

(156 Pac. 289.)

1.  **APPEAL AND ERROR—Disposition of Cause—Affirmance—Insufficiency of Briefs.**  The court will not examine the record in search of prejudicial errors which are not clearly pointed out and insisted on in the brief of the complaining party, and it is not enough to assert in general terms that the ruling of the trial court is wrong, for on this the point will not be considered as having been made; but counsel should support the same with argument and citation of authority where possible.

2. **SAME—Review—Questions of Fact.** Where the jury has passed upon the question of fraud, and there is evidence tending to support the verdict, it will not be disturbed on appeal.

3. **SAME.** The Supreme Court will not weigh the evidence to determine whether it would have reached a different conclusion.

### ON REHEARING.

4. **APPEAL AND ERROR—Review—Prejudicial Effect of Error.** Although there may be errors, unless they resulted in substantial injury or injustice to the complaining party, the judgment must be affirmed. The Supreme Court is required by statute to disregard any error in the pleadings or proceedings which does not affect the substantial rights of the party appealing.

(Syllabus by Robberts, C.)

*Error from Superior Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Action by Jonas Johannessen against J. E. Cavanagh. Judgment for plaintiff, and defendant brings error. Affirmed.

*Gordon & McInnis,* for plaintiff in error.

*E. Allen Boyd* and *Counts & Counts,* for defendant in error.

Opinion by ROBBERTS, C. This action was commenced in the superior court of Pittsburg county, by Jonas Johannessen, defendant in error, as plaintiff, against J. E. Cavanagh, plaintiff in error, as defendant. Herein the defendant in error will be referred to as plaintiff, and the plaintiff in error will be referred to as defendant.

The following is a statement of the pleadings, evidence, and proceedings leading up to the judgment for $3,123, rendered in favor of the plaintiff and against the defendant October 19, 1912:

The material allegations of plaintiff's petition are as follows: That at various times between November 11,

1910, and March 20, 1911, defendant falsely and fraudulently, and with intent to defraud plaintiff, represented to plaintiff that Alderson Coal Company had a valid mining lease from the Indian Coal & Mining Company, upon which Alderson Coal Company was then operating a coal mine, and that Alderson Coal Company had $826 cash in bank; that its stock was of the actual value of $15 per share; that the Alderson Coal Company could sell coal produced from the said mine for $2.50 to $2.75 per ton, run of mine, and that the cost of producing coal did not exceed $1.35 per ton f. o. b. cars at tipple. That said representations were false and known to be false by defendant when made, and that in truth the Alderson Coal Company had no such valid lease, and had no cash in bank except $375, and that the stock was valueless; that the company was at all times insolvent, and that it was adjudged bankrupt September 2, 1911; that the company could not sell coal produced from the mine at a price greater than $1.85 per ton f. o. b. cars at tipple; that, relying upon the representations of defendant, plaintiff purchased from defendant November 14, 1910, 237 shares of the stock of the Alderson Coal Company at $15 per share, an aggregate of $3,555, and that by reason thereof the plaintiff was damaged in the sum of $3,555, for which sum plaintiff asked judgment. Defendant answered by general denial.

Jonas Johannessen, the plaintiff, testified that he first met Cavanagh, the defendant, November 13, 1910, and was introduced to Cavanagh by M. J. Smith; that Cavanagh said that he had a valuable coal lease which should be a very good thing for a man who wanted to go into a little business, and that he had a chance to buy some stock in the company from another man at from $25 to $30 per

share, but that he would rather sell to Johannessen at $15 a share, because Johannessen was a practical coal man; that Johannessen asked Cavanagh to see the lease, and Cavanagh said it was mislaid; that Cavanagh claimed the value of the stock was $50 a share; that Smith and Cavanagh said coal could be produced from the mine for $1.35 per ton, and could be sold for $2.50 to $2.75 per ton; that Cavanagh said he was not a practical man in the coal business; that Johannessen examined the mine and afterwards bought 237 shares of stock at $15 per share, being an aggregate consideration of $3,555; that when he (Johannessen) examined the mine he examined it from the standpoint of a practical miner, and examined the buildings and equipment; that he believed the statement of Cavanagh and Smith regarding the price for which they could produce and sell coal and regarding the value of the stock, and on the strength of this belief made the purchase; that he took charge of the mine as manager March 1, 1911; that he had been working around coal mines for more than 15 years; that during his management it cost $1.90 to $1.95 per ton to produce the coal, and the coal was sold to a cement firm at Ada for $1.95 per ton; some mines at that time were selling their coal at from $1.65 up to $2.25 per ton; that when he went down in the mine before he bought his stock he examined the seam of the coal, the quality of the coal, the workings in the mine, the falls of rock, the water, the distance the slope had been taken down, the number of entries which had been begun, the number of rooms which had been turned, the number of working places that were in the mine, and continued the examination and found out what was the original output at that time; that he was a practical coal miner and by examining a mine could tell about the cost of producing coal from

same; that one knowing the condition of a mine and experienced in that kind of work by going into the details of the matter can figure closely whether coal can be gotten out at a profit; that Cavanagh did not represent himself to be a practical coal man; that the witness represented to Cavanagh that he had worked for 15 years in coal mines; that Cavanagh wanted witness to purchase said stock because he (Cavanagh) said he was not a practical coal man, and witness had had 15 or 20 years' experience in the business; that at the time of the examination of the mine by witness, before he bought his stock, the mine was in bad condition; that he knew that in order to produce coal from the mine cheaply it would be necessary for him or some other skilled man in that sort of work to go there and clean up the mine; that he knew this would be necessary before coal could be produced from the mine for $1.35; that he resigned as general manager June 1, 1911.

J. R. Richards, a witness for Johannessen, gave testimony concerning his investigation of the lease of the Alderson Coal Company, all of same touching transactions some time subsequent to Johannessen's purchase, and not affecting the assignment of error presented for review by this appeal.

George M. Swift, a witness for Johannessen, testified that he was the secretary and one of the directors of the Alderson Coal Company, acting as secretary up to May, 1911, and that J. E. Nichols was secretary and treasurer of Indian Coal & Mining Company. The witness identified certain correspondence which was introduced in evidence, and which will be subsequently referred to.

J. E. Cavanagh, defendant, testified in his own behalf that he was a lumber man, and had had no experience in

coal mining before October or November, 1910; that he first met Johannessen in November, 1910, and on the 14th day of that month sold Johannessen the stock in the Alderson Coal Company; that he made no statement to Johannessen as to the price at which coal could be purchased or sold; that he did not go with Johannessen to examine the mine, and that he himself was not a practical coal miner; that he had turned over to Johannessen everything that he had available relating to the affairs of the Alderson Coal Company for his inspection; that he had made no false statements concerning the affairs of the company so far as he knew; that he had no knowledge concerning the details of the operation of the Alderson mine; that he was not an officer of the Alderson Company at that time; that George M. Swift was in active charge of the company at that time, and that he (Cavanagh) heard no complaint from Johannessen about being defrauded until after the company went bankrupt, and a few days before the summons in this action was served on him (Cavanagh); that the first complaint made by Johannessen was made by Mr. Boyd, one of the attorneys in this case for Johannessen, and that prior to that time there had never been any claim by Johannessen or Richards that the affairs of the company had been misrepresented; that the minutes concerning the purchase of the lease by Alderson Coal Company were in the minute book of the company when Johannessen bought his stock; that Johannessen, when he bought his stock, told witness that he had examined the mine; witness did not know what the coal was costing, but Swift had the information, the business at that time being in charge of Swift; that witness did not consider the approval of the Indian Coal & Mining Company necessary to the lease, and that witness did not know then whether it

was necessary or not; that witness thought he was transferring the lease in proper form to the Alderson Company, and thought they owned it when the stock was sold to Johannessen.

M. J. Smith testified as witness for the defendant that he introduced Johannessen to Cavanagh in November, 1910; that he and Johannessen examined the mine together; that all information pertaining to the company was turned over to Johannessen; that a copy of the lease was in the minute book, which Johannessen examined before he bought his stock; that the minute book also contained the transfer from Cavanagh to the Alderson Coal Company accepted by the board of directors; that witness made no false statement to Johannessen concerning the affairs of the Alderson Coal Company; that the witness did not tell Johannessen anything about the title of the Alderson Coal Company, but showed him the minute book and a copy of the contract contained in same; that he did tell Johannessen that the original lease was in the Indian Coal & Mining Company, and showed Johannessen a government copy of the lease, and also showed Johannessen the minutes of the Alderson Coal Company showing their contract; that the Alderson Coal Company afterwards became bankrupt.

The original lease introduced in evidence is a lease from the Choctaw and Chickasaw Nation of Indians through the Department of the Interior of the United States covering the mining property concerned in this action, extended March 15, 1899, for a period of 30 years, and containing the following provisions:

"The party of the second part further covenants and agrees  *  *  *  that he will not at any time during the

term hereby granted, assign, or transfer his estate, interest, or term in said premises and land or the appurtenances thereto to any person or persons whomsoever without the written consent thereto of the parties of the first part being first obtained, subject to the approval of the Secretary of the Interior. * * * That should the party of the second part, his executors, administrators, or assigns, violate any of the covenants, stipulations, or provisions of this lease, * * * then the Secretary of the Interior shall be at liberty in his discretion to avoid this indenture of lease * * * and cause same to be annulled. * * *"

The assignment by Indian Coal & Mining Company to Cavanagh was executed May 31, 1910, and was for a term of ten years. It retained the reversion, after the expiration of Cavanagh's term, in Indian Coal & Mining Company, and contained the following covenants:

"That they will not, at any time during the term hereby granted, assign, transfer, or sublet their interests in said lease, without the consent of the party of the first part. * * * And the party of the second part agrees * * * that, should the party of the second part violate any of the covenants of this lease, * * * then the party of the first part shall be at liberty, in their discretion, to avoid this indenture of lease, and cause the same to be annulled, when all rights, franchises, and privileges of the party of the second part shall cease and end without further proceeding."

Both parties having rested their cases, the defendant tendered requested instructions Nos. 1 to 16, inclusive, some of which were refused and exceptions allowed. Thereafter the court instructed the jury in writing, and certain exceptions were allowed the defendant. The jury returned a verdict in favor of the plaintiff for $3,123, for which amount judgment was entered.

Defendant filed motion for new trial, alleging: First, excessive damages appearing to have been given under the influence of passion and prejudice; second, error in the assessment of the recovery, in that said assessment was too large; third, that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law; and, fourth, error of law occurring at the trial, and duly excepted to at the time by this defendant. The motion for new trial was overruled and exceptions saved. Defendant brings error.

Counsel for defendant have made a clear and fair statement of the case, and we adopt it herein.

Although not set out in the brief, we find from the record that in his petition in error the defendant submits 65 grounds, or reasons, why this case should be reversed, covering the following general assignments: (1) The overruling of defendant's demurrer to the plaintiff's petition; (2) the next 46 go to the admission and rejection of testimony; (3) the following 17 question the giving and refusal of instructions; (4) the sixty-fourth complains of the overruling of the motion for new trial; and (5) the sixty-fifth, that the court erred in entering judgment for the plaintiff. The contention that the trial court erred in overruling the demurrer to the petition cannot be sustained. To our mind, the petition contains a clear and concise statement of the plaintiff's cause of action. The fact that counsel do not point out, and clearly indicate in their brief, wherein the petition is deficient, justifies this court in assuming that they do not seriously contend for this assignment. The following 46 assignments go to the admission and rejection of testimony at the trial. Neither time nor space would justify or permit us to take up each

of these several 46 assignments and discuss or dwell upon them separately, and many, if not most of them, are mere abstract statements of the error complained of, without any effort or attempt on the part of counsel to specifically point out wherein the ruling of the court is erroneous and prejudicial to the rights of defendant. This is not sufficient. As stated in *Ferguson v. Union National Bank,* 23 Okla. 37, 99 Pac. 641:

"This court will not examine the record in search of prejudicial errors which are not clearly pointed out and insisted on in the brief of the complaining party, and it is not enough to assert in general terms that the ruling of the trial court is wrong, for on this the point will not be considered as having been made; but counsel should support the same with argument and citation of authority where possible."

The third assignment is, that the court erred in admitting the testimony of the plaintiff which is as follows: "Q. What statement, if any, did he (defendant) make to you regarding the value of the stock of the company?" This question is objected to by counsel for defendant, as "incompetent, irrelevant, and immaterial, and calls for an expression of opinion, and not a matter of expert testimony."

The objection was properly overruled by the court. Although not explained in the brief, by reference to the record we find the testimony was being offered, not for the purpose of fixing the value of the property or stock, but to prove the statement of the defendant, to the plaintiff as to its value, undoubtedly for the purpose of showing that the defendant made false statements in regard thereto, as alleged in the petition. There was no error in overruling the objection.

Assignments 10 and 11 in the petition in error go to the admission of certain testimony of the witness J. R. Richards. It appears from the record that in March, 1911, the plaintiff procured this witness to come from Pennsylvania, for the purpose of examining and, if possible, ascertaining the true condition of the Alderson Coal Company. The court very properly told the jury at the time the testimony was given that it was not admitted, and should not be considered by them, for the purpose of proving the fraud, if any, which is alleged to have been committed several months previous, but simply for the purpose of showing the condition of the Alderson Coal Company at that time. In the course of his testimony the witness was asked concerning the lease from the Indian Coal & Mining Company to the Alderson Coal Company. This was objected to by defendant and objection overruled by the court. He answered:

"I found that the lease had never been transferred from the Indian Coal & Mining Company to the Alderson Coal Company."

The same witness testified that he had owned stock in the Alderson Coal Company and had sold it, and turned the money into the company to pay its debts. This testimony was objected to and assigned as error. We cannot say that this testimony was not properly admitted, and we find no error in the ruling of the court thereon.

More than 150 pages of the record are taken up with testimony tending to prove and disprove the allegations of fraud as charged in the plaintiff's petition. Counsel for defendant quote many excerpts from this testimony in their petition in error, contending that the court erred in the admission or rejection thereof, but fail in their brief

and argument to specifically point out how or wherein the defendant was prejudiced in this particular.

In *Allison v. Bryan*, 26 Okla. 520, 109 Pac. 934, 30 L. R. A. (N. S.) 146, 138 Am. St. Rep. 988, this court lays down the rule as follows:

"It is essential that all points upon which counsel rely for a reversal of a cause be made in the brief and properly made; if not so made they are waived. It is not enough to assert in general terms that a ruling of the trial court is wrong; a fair effort must be made to prove that it is wrong, * * * or the point will not be considered as having been made."

Notwithstanding this rule, we have carefully examined the record, and the testimony objected to, as well as the context thereof, and are of opinion that no error was committed by the court in the admission or rejection of testimony. The greater part of defendant's brief is taken up in the argument of contentions that the court erred in giving and refusing certain instructions. We have examined the instructions given, as well as those refused, and upon consideration of the entire record, we are of opinion that no prejudicial error was committed by the court in the giving or refusing of instructions.

This brings us to the contention that the verdict of the jury and judgment of the court are not sustained by the evidence. As hereinbefore stated, the case was fairly submitted to the jury. They are the exclusive judges of the facts. They heard the evidence, saw the witnesses, and are better qualified to pass upon the questions of fact than this court. There was some testimony tending to support every material allegation of the plaintiff's petition. It is not the province of this court to weigh the evidence. It was heard and approved by the trial court.

The Supreme Court will not weigh the .evidence to determine whether it would have reached a different conclusion. *Texas Company v. Collins,* 42 Okla. 374, 141 Pac. 783. Where the verdict is reasonably supported by the evidence, it will not be disturbed for insufficiency of the evidence in this court. *St. L. & S. F. R. Co. v. Kerns,* 41 Okla. 167, 136 Pac. 169.

"Where the jury has passed upon the question of fraud, and there is evidence tending to support the verdict, it will not be disturbed on appeal." *(L. L. Tyer & Son v. Wheeler,* 41 Okla. 335, 135 Pac. 351.)

The judgment should be affirmed.

## ON REHEARING.

Opinion by ROBBERTS, C. Original opinion withdrawn and modified, and further rehearing denied.

Counsel for defendant strenuously object to that part of the former opinion in this case, which we have withdrawn, wherein we held that the general assignment of errors as grounds for new trial in the language of the statute, "for errors of law occurring at the trial," do not present for consideration of the court the giving or refusing of instructions duly excepted to, for the reason that the language is too general and does not call the attention of the court to the specific error complained of. The writer hereof is still of the opinion that the holding in the original opinion in that particular was correct and supported, not only on general principle, and by a long line of authorities of other states, but by the several decisions of this state; and without further argument we call attention to the following cases: *Wood v. Farnham,* 1 Okla. 378, 33 Pac. 867; *Carter & Bro. v. Missouri Mining Co.,* 6 Okla.

15, 41 Pac. 356; *Boyd v. Bryant*, 11 Okla. 56, 65 Pac. 940; *Baker v. Tate*, 41 Okla. 355, 138 'Pac.' 171; *Glaser v. Glaser*, 13 Okla. 389, 74 Pac. 944; *Shuler v. Collins*, 40 Okla. 126, 136 Pac. 752, and several other cases which sustain that doctrine and practice.

However, while my associates agree with me upon the proposition of law, they seem to be of the opinion that the practice has been so general to the contrary that it might work a hardship to establish a strict rule of that kind at this time. We therefore withdraw from the former opinion our holding in that particular. However, our former decision was not based entirely upon that particular question. We stated therein that we had carefully examined the requested and refused instructions, and were unable to say that the giving or refusing of the same by the trial court was prejudicial to the rights of the defendant. Our language in the original opinion was:

"We have examined the instructions given, as well as those refused, and upon consideration of the entire record, we are of opinion that no prejudicial error was committed in the giving or refusing of instructions."

We have gone over the case again, and while we do not discuss with particularity all the different points and propositions raised by the defendant, we have not overlooked any of them, but on the contrary have given them all careful consideration, and are still of the opinion that counsel has failed to point out wherein the trial court committed such error as would justify a reversal of the case.

From a careful consideration of the record, we find that the case was carefully and fairly tried by the court, assisted by able counsel on both sides, and the verdict re-

turned by the jury appears to be fully sustained by the evidence. The statutes of this state require this court to disregard any error in the pleadings or proceedings which does not affect the substantial rights of the party appealing. *St. Louis & S. F. R. Co. v. Houston*, 27 Okla. 719, 117 Pac. 184.

Further rehearing should be denied.

By the Court: It is so ordered.