## MORTON v. THOMASON et al.

No. 19412. Opinion Filed Sept. 30, 1930.

Rehearing Denied Dec. 23, 1930.

O. A. Morton and Mark L. Bozarth, for plaintiff in error.

W. A. Barnett, for M. M. Thomason, as guardian.

H. S. Samples, for defendant in error.

REID, C. The plaintiff's petition was in two counts, the first one alleging: That one Washie Riley, an incompetent, through his guardian, M. M. Thomason, claimed an interest as an heir in the allotted lands of three certain full-blood Creek Indians; that the title to these lands was involved in numerous suits in Creek, Seminole, and Hughes counties, Okla., in which the guardian was a party at interest either as plaintiff or defendant; that in undertaking to establish said incompetent's rights in said allotments it was necessary to spend certain sums of money in interviewing witnesses, collecting evidence and securing the attendance of the witnesses, paying court costs and other necessary expenses incident to the litigation; that neither the incompetent nor his guardian had any funds to bear this expense; that the plaintiff, at the solicitation of the defendants herein, advanced from time to time sums of money aggregating $3,838.94; that he advanced this sum without any interest in the result of

the litigation and had none other than as a creditor of the estate by reason of such advancements: that the interest of said incompetent as an heir of the allottees was established and his guardian, Thomason, received in settlement therefor the sum of $6,000, which sum, or the major part thereof, was then on deposit to the credit of said guardian in the two defendant banks. The petition further alleged that the defendants Joe S. Eaton and H. S. Samples were given and had approved by the county court of Okmulgee county a contract as attorneys to represent said incompetent in said litigation and that said attorneys thereafter became entitled to and were allowed by the district court of Okmulgee county a fee of $1,500, and the guardian was directed to pay the same out of said funds. In conclusion of this count the petition stated that by reason of the agreement between him and the defendants he was entitled to receive the sums expended by him for the incompetent and to have the same impressed as a lien on the funds received by the guardian, and he asked for an injunction to restrain the parties from drawing out of the bank the funds on which he claimed the lien and thus placing it beyond the jurisdiction of the court.

In the second count of his petition he reaffirmed the allegations of his first count, and alleged that in 1925 the law firm of Diamond & Orr held a valid claim against the estate of the incompetent for legal services rendered and expenses incurred in the prosecution of said litigation; that the said Thomason, as guardian of the incompetent, made an agreement with said lawyers to pay and discharge the claim, and being without funds, Thomason, as guardian, with the knowledge and consent and advice of the law firm of Eaton & Samples, and other defendants herein, made application to the Central National Bank of Okmulgee for a loan of $1,500 to pay Diamond & Orr, and that said attorneys, Thomason individually, and as guardian aforesaid, induced plaintiff to make a contract guaranteeing the payment of a note for said sum, which note is shown by copy as exhibit to have been signed as follows: "Melvin Thomason, Gdn. Washie Riley, Melvin Thomason." He alleged that the money was thus secured and that Diamond & Orr were paid their claim; and that when the note became due it was not paid by Thomason, and upon demand of the bank plaintiff paid it and took an assignment of the note to him; that he had made demand of Thomason and of the firm of Eaton & Samples, but they had refused to pay the note.

In another paragraph of this count the plaintiff stated, in substance, that prior to the time that Thomason was appointed guardian and Eaton & Samples were employed to handle said litigation, the claim of Washie Riley, the incompetent in said allotments, had been decided against him, and finally adjudicated in a court of competent jurisdiction wherein he was decreed not to have any interest in said allotments; and upon this plaintiff alleged that the undertaking of Thomason and said attorneys in the litigation was a joint adventure, out of which they had recovered the $6,000, and from which fund he was entitled to be first reimbursed for his advancements to the undertaking which had been closed by the collection aforesaid. He prayed for judgment against Thomason individually and as guardian of the incompetent, and also against Eaton & Samples for the amounts alleged to be due in each cause of action, and that he be decreed to have a lien on and a superior interest in said recovered funds for the amount of his claim and that the defendants be enjoined from disposing of said funds pending the litigation.

The journal entry of the judgment appealed from disclosed that the only action taken by the court was sustaining the demurrers of Thomason, as guardian, and that of H. S. Samples to plaintiff's petition and dismissing the action. And this ruling presents the only questions necessary to be reviewed here.

The first question for solution is whether the petition states a cause of action against Thomason, as guardian of the incompetent.

No statute of this state nor decision of this court has been cited by the plaintiff, and we have not been able to find any, indicating that a guardian has authority to make a contract, either expressed or implied, and thereby bind the estate of his ward in the manner contended for by the plaintiff.

In the case of Jones v. Johnson, 72 Okla. 134, 178 Pac. 984, 21 A. L. R. 903, the court decided the principle which determines the question. From the opinion in that case it appears that Johnson was guardian of certain minors and in their name by himself as guardian, brought suit for the minors against Jones and another party. During the progress of the case the guardian obtained an attachment for the plaintiff and signed the attachment bond, "E. B. Johnson,

Guardian, Principal." On the trial of the action the attachment was dissolved, whereupon Jones brought a suit on the bond, apparently as given. In the trial of that case Johnson denied personal liability, but it is not clear that any defense was made as to the liability of the guardian as such. There was a verdict and judgment against "E. B. Johnson, Guardian," and the plaintiff, Jones, was attempting to collect the judgment from Johnson individually, and Johnson obtained an injunction in the district court. On appeal this court held that Johnson had no power as guardian to bind the estate of his wards for the payment of the damages provided for in the bond, and that the judgment was operative against him as an individual only; he having bound himself thus by signing the bond.

When carefully considered, the opinion in the foregoing case, which seems based upon abundant authority, is sufficient for us to hold that Thomason had no right to bind by contract the estate of his ward for the amounts alleged to have been advanced by plaintiff; nor could he do it by implication by entering into any character of scheme or joint adventure whereby the estate, when recovered to the possession of the guardian, became as having a lien thereon for the advancements.

The next question to be discussed is whether the court erred in sustaining the demurrer of defendant H. S. Samples to plaintiff's petition. Upon first examination of the petition it would appear that plaintiff probably sought to recover against the members of the law firm of Eaton & Samples on the theory that they were primarily bound for the payment of the sums advanced by plaintiff to sustain the litigation by the guardian, for it is alleged that these attorneys were interested in the recovery; or, that, aside from the recovered fund, he sought judgment against these defendants as his co-adventurers for their pro rata share of the expenses of the enterprise. However, upon examination of plaintiff's briefs—more especially his reply brief—we have concluded that he has finally pitched his case entirely and alone upon the theory that the entire transaction pleaded constituted a joint adventure which was consummated in the collection of the $6,000 by the guardian, who thereupon became the trustee, holding the same as the fruits of the venture, and that this suit is simply to subject the funds to payment of the expense of the venture, and that these defendants were made parties because they were asserting an interest in this fund. The position of the plaintiff in these matters is somewhat hard to understand, but our conclusion is confirmed by the fact that we observe that Thomason did not answer personally and that Eaton never answered, but no personal judgment was taken against either of them.

If the plaintiff ever expected to recover against Samples, personally, then it has been abandoned, as such claim is not argued in the brief, only casually mentioned, and there are no authorities cited to support such contention. Therefore we are authorized to hold the same abandoned. Provins v. Lovi, 6 Okla. 94, 50 Pac. 81; Allison v. Bryan, 26 Okla. 520, 109 Pac. 934; Arthur v. Coyne, 32 Okla. 527, 122 Pac. 688; Cavanagh v. Johannessen, 57 Okla. 149, 156 Pac. 289; Cogswell Lbr. Co. v. Manahan, 135 Okla. 174, 274 Pac. 871.

We have already said that the guardian had no power to bind his ward or his estate in the manner claimed by plaintiff; and from this holding, it necessarily follows that plaintiff had no interest directly or indirectly in the recovered fund.

What we have found to be the law upon the only questions presented by the appeal renders the affirmance of this case necessary; and it is so ordered.

TEEHEE, LEACH, EAGLETON, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.