## ST. PAUL FIRE & MARINE INSURANCE CO. v. OTWELL.

No. 22326.    Sept. 25, 1934.

Rehearing Denied Oct. 23, 1934.

Long, Depew & Stanley and Clayton Carder, for plaintiff in error.

Bailey & McLaury, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the lower court, plaintiff in error as defendant, and defendant in error as plaintiff. On the 22nd day of May, 1929, the St. Paul Fire and Marine Insurance Company issued it policy of insurance covering 325 acres of wheat, the property of J. M. Otwell, to the extent of $10 per acre, against loss on account of hail. The property insured was in four fields; 45 acres in section 23, and 100 acres in section 22, 80 acres in section 34, and 100 acres in section 35, all in township 2 north, range 17 west, in Kiowa county, Okla. The plaintiff paid the premium of $325, and claims that on or about the 2nd day of July, 1929, he suffered a loss on account of hail, and thereafter brought suit. In his petition he claims he sustained damages as follows: That 10 acres in section 23 were totally destroyed, to his damage of $100; that 100 acres in section 22 were totally destroyed, to his damage of $1,000; that 80 acres in section 34 were damaged to the extent of 60 per cent. to his loss of $480; that 65 acres in section 35 were totally destroyed, to his damage of $650, and 35 acres in section 35 were damaged 75 per cent., to his damage of $262.50, and that the total damages as sustained was $2,492.50. He claims that within 48 hours thereafter he gave written notice of the statement of his loss to the defendant company. In response to such notice, the defendant sent an adjuster to examine the loss, but refused to examine the loss except upon the execution of a nonwaiver agreement, which was accordingly executed by the plaintiff.

The plaintiff claims that in response to a letter from him within 60 days of the loss, the defendant wrote him a letter stating that the adjuster had found no loss within the terms of the policy, and that they were going to stand by his report and refuse to make any settlement with the plaintiff. The suit was tried to a jury, and the jury rendered a verdict in favor of the plaintiff for the sum of $1,500.

A motion for new trial was duly filed by the defendant and overruled. Judgment was rendered on the verdict, and the defendant has perfected his appeal, and the cause is now here for review.

1. The plaintiff in error, defendant below, sets forth 11 assignments of error. The plaintiff in error, however, in its brief, urges but two of these assignments, assignments Nos. 4 and 9, and under the rule as laid down in Morton v. Thomason et al., 146 Okla. 255, 293 P. 1005, the court will treat the other assignments of error as waived, which rule is as follows:

"It is well settled practice of this court that though a question be raised in the motion for a new trial and also by assignment of error on appeal, yet if it is not presented in the brief, argument made thereon, and authorities cited, this court will hold the question as waived."

2. We will therefore take up the assignments of error that counsel presents in its brief. The first proposition presented is under assignment of error No. 9, which was:

"That the court erred in giving to the jury instruction No. 7, to which action the defendant duly excepted and the exception was allowed."

Counsel for plaintiff in error argues this assignment under the following proposition:

"1. The court erroneously instructed the jury in instruction No. 7 that the measure of plaintiff's recovery was the entire amount necessary to compensate him for damages sustained to his crop, while the policy expressly provides that the amount payable should be in such proportion to $10 per acre as the damaged portion of the crop bears to the sound condition of the crop."

The policy introduced in evidence at the trial contains the following provision:

"In event of the total destruction by hail only the crops hereby described, or any part thereof, the amount payable hereunder as to each acre where this policy covers shall be the amount per acre named herein, and in event of partial destruction by hail only of the crops, or any part thereof, described in this policy, the amount payable per acre under this policy shall be in such proportion to the amount per acre specified herein as the damaged portion of said crops bears to the sound condition of the particular crop or crops so damaged."

The instruction complained of is as follows:

"You are instructed that in case you find for the plaintiff under the evidence and these instructions, you will return a verdict for the plaintiff for such sum as you find from the evidence will compensate him for the damage sustained to the crop of wheat covered by the policy in question herein, not to exceed the sum of $2,942.50."

The plaintiff in error contends that this is reversible error. Counsel cites no authorities, but argues that the provision in the policy shows upon its face that the instruction is erroneous and that the cause should be reversed, for the reason that the jury were not given the proper instruction as to the measure of damages to be awarded the plaintiff, if any had been sustained.

In viewing this situation, it is necessary to take into consideration the allegations of the petition of the plaintiff, the proof offered, and the meaning of this provision of the policy. Under the averments of plaintiff's petition, it is alleged that 10 acres of wheat in section 23 were totally destroyed, for which he claims $100 damages, or $10 per acre; that 100 acres in section 22 were totally destroyed, for which he claims damages at $10 per acre, or $1,000: that 65 acres in section 35 were totally destroyed, for which he claims damages at $10 per acre, or $650. The plaintiff substantiates these allegations by his proof, and, if this is true, and if this proof is correct, he has sustained damages at a total loss of $1,750. Under the averments of his petition, he claims a 75 per cent. loss in section 34 to 80 acres, for which he claims $480, and a 75 per cent. loss on 35 acres in section 35, for which he claims $262.50, and his proof establishes this percentage of loss. If the jury is satisfied with his proof, it then becomes necessary to determine the meaning of the provision in the policy.

It will be observed that the provision in the policy takes care of two contingencies: First, for a total loss: and second, for a partial loss. The part which provides for total loss is as follows:

"In event of the total destruction by hail only, the crops hereby described, or any part thereof, the amount payable hereunder as to each acre where this policy covers shall be the amount per acre named herein," etc.

Thus, under this provision, it occurs to us that there can be no argument. If the crop, or any portion thereof, is totally de-

stroyed, the amount payable is the limit set forth in the policy; and in this case, that would be $10 per acre. Of course, there is a reason for this provision. If the crop is totally destroyed, there would be no way of telling what the yield would be, and it would have to be covered by the full extent of the liability under the policy.

The latter portion of the provision covers partial loss, and reads as follows:

"* * * and in event of partial destruction by hail only of the crops, or any part thereof, described in this policy, the amount payable per acre under this policy shall be in such proportion to the amount per acre specified herein as the damaged portion of said crop bears to the sound condition of the particular crop, or crops, so damaged."

The evidence of the plaintiff being that ten acres in one field, 100 acres in another field, 65 acres in another field, were totally destroyed, the former part of the provision in that case would govern. Thus, there is testimony in the record upon which the jury could have found as a total loss, the verdict for $1,500, which they returned into court. The defendant did not request an instruction correctly defining the measure of damages. This being true, we fail to see where the defendant company was prejudiced by instruction No. 7, under the rule as laid down in the case of Dodson & Williams v. Parsons, 62 Okla. 298, 162 P. 1090, wherein it was said:

"Where there is competent evidence tending to show damages alleged, and the verdict is not excessive, and when the complaining party does not request the trial court to give an instruction correctly stating the measure of damages, a cause will not be reversed because the court's charge does not accurately define the measure of damages."

The plaintiff was suing for damages in the sum of $2,492.50, and the verdict being for $1,500, under our view as above expressed, the defendant could not have been prejudiced by a failure to instruct the jury under a provision of the policy in respect to covering partial losses, which is provided for under the terms of the policy.

3. The plaintiff in error, defendant below, under its second assignment of error, states:

"The court refused to permit the defendant to offer negative evidence as to the mailing of statement of loss and denial of liability within 60 days after the loss."

The plaintiff in error, under this assignment, submits this proposition:

"The court erred in refusing to allow the defendant to offer negative evidence regarding the correspondence which the plaintiff orally testified about but could not produce."

The testimony in regard to which complaint is made covers the following situation: Plaintiff had testified that he had written a letter to the defendant, and, in reply thereto, the defendant had written to him a letter denying liability for the damage to his crop within 60 days of the alleged loss, and he testified that he had lost the letter received and had retained no copy of the letter written by him. The defendant produced L. B. Van Arsdale as a witness to prove that he had a file containing the correspondence between the parties. The witness was the secretary and treasurer of the company, and stated that he was in charge of the files and records of the company, and it was sought to prove by the witness the inference that no such letter about which plaintiff had testified he had written, to which he testified that he had received a reply denying liability, had ever been received by the company within 60 days of the loss; and that, by reason of that fact, there was no such letter in the files. There was some contention as to whether the witness was qualified to answer the question, or whether the files had been properly identified, but, in the course of the examination, the court permitted the following question to be asked and answer given:

"Q. Are there any other letters in the files except these three exhibits 6, 8 and 12, from J. N. Otwell? A. No, sir."

By this question and answer, the defendant was permitted to prove all that he sought to prove by the witness, even though the other testimony offered by the witness, and refused by the court, had been competent testimony.

In view of the fact that the court permitted this question and answer, the refusal to admit other testimony, even though it were competent, would not work a reversal of the judgment, for the reason that it could not be prejudicial to the defendant, he having already been permitted the introduction of this question and answer to prove everything that he sought to prove by the witness.

In Morehead et ux. v. Fidelity Building & Loan Association, 145 Okla. 215, 292 P. 71, the court has laid down this rule:

"The exclusion of competent evidence in the trial of the cause, in order to work a reversal of the judgment, must be shown to have been prejudicial to the party complaining."

The only object of the other testimony that defendant sought to prove by the witness was simply to amplify the question and answer permitted. Finding no error in the record for the reasons herein stated of a sufficient nature to reverse the cause, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys John W. Hayson, V. E. McInnis, and J. D. Lydick in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hayson and approved by Mr. McInnis and Mr. Lydick, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion, as modified, was adopted.