**GOLD KIST PEANUT GROWERS ASSO-
CIATION, Plaintiff in Error,**

v.

**Herschel WALDMAN, Defendant in Error.**

No. 39611.

Supreme Court of Oklahoma.

Nov. 28, 1962.

P. D. Erwin, Chandler, and Boatman, Pugsley & Boatman, Okmulgee, for plaintiff in error.

William A. Vassar, Chandler, for defendant in error.

## PER CURIAM.

The parties to this action will be referred to in this opinion as they appeared in the trial court.

The defendant in error began this trial in the District Court of Lincoln County, Oklahoma, on January 29, 1960, against the plaintiff in error for the alleged wrongful sale of seed peanuts for actual and exemplary damages growing out of the purchase by the defendant from one John Biles, a local dealer in peanuts, wherein the plaintiff alleged by his petition that the peanuts had been sold to the said John Biles by the defendant for resale, the peanuts had been purchased by the plaintiff in the original packages to which were attached tags placed thereon by the defendant representing the germination test of the peanuts to be 80%; that said representation tags or certificates attached to the bags of peanuts were false and fraudulent, and that said peanuts actually tested as low as 55%.

Plaintiff further alleged by his petition that the certificate of germination and representation made was untrue and fraudulent and that the defendant knew or should have known that the same was not true; that at the time the tag was caused to be fixed to the bags by the defendant, that the defendant had not had a germination test made upon the seed; that relying on the information contained on the said tags, that he purchased the same for use as seed and did thereafter plant forty acres of 1800 pounds of seed which he had purchased; that said seed failed to germinate properly as a result thereof; that he did not secure a stand of peanuts as good as he would have secured had the seed tested 80% as said tags showed; that such seed only tested 55% and that such fact was known or should have been known to the defendant at the time the seed was sold; that because of the misrepresentation by the defendant, he lost in excess of 1000 bushels of peanuts which would have grown had such seed tested as shown on the tags, and as a result thereof he has been damaged in the sum

of $3000.00, and on his first cause of action the plaintiff prayed for judgment against the defendant for the sum of $3,000.00.

As a second cause of action the plaintiff alleged in his petition that the conduct of the defendant in deceiving the plaintiff was wanton, wrongful and malicious, and that as a result thereof the defendant became liable to the plaintiff for exemplary damages, and he asks judgment on this second cause of action in the sum of $3,000.00.

Upon the court's sustaining the motion of the defendant to make the petition more definite and certain, the plaintiff filed an amendment to the petition, alleging that he would have expended the sum of $200.00 for the threshing and hauling of such peanuts to market, and reduced the damages prayed for in his first cause of action to the sum of $2800.00, and also reduced the amount prayed for in the second cause of action to the sum of $2800.00.

Defendant's demurrers to both the first and second causes of action having been overruled by the court, the defendant filed its answer which was a general denial, and a specific denial that the defendant had ever made any representation of warranty of any kind to the plaintiff, and that it had never had any dealings with the plaintiff.

The cause was tried to a jury upon the issues made by the pleadings and the evidence as presented by the plaintiff and defendant, and the instructions of the court, and resulted in a jury verdict for the plaintiff upon the plaintiff's first cause of action in the amount of $1100.00, and for the defendant upon the plaintiff's second cause of action for exemplary damages.

Motion for new trial was filed by the defendant, was heard by the court and was overruled and judgment was entered by the court in the amount of the jury verdict of $1100.00, from which action of the court the defendant has filed this appeal.

In its brief the defendant alleges eleven assignments of error by the trial court and argues such assignments of error under three propositions. Proposition 1—the petition and amended petition did not state a cause of action based on implied warranty or on fraud.

■ Assignments of error numbered one, two, three, four and seven, were argued by the defendant under this proposition. The defendant contended that the petition as amended and the evidence of the plaintiff as presented in the trial of the case stated that the seed of which the plaintiff complained was purchased from one John Biles, a local dealer, of Chandler, Oklahoma, and that the plaintiff never knew the defendant and never had any transactions or dealings with the defendant; that the case was tried on the theory of implied warranty, which is a contractual relationship, and there being no privity between the plaintiff and the defendant, that the plaintiff had no cause of action as stated in his cause of action number two for punitive or exemplary damages, and that the court erred in not sustaining the defendant's demurrer to the second cause of action of the plaintiff for such damages. In as much as the jury found the issues on the second cause of action for the defendant, and the plaintiff failed to recover damages upon that count, the defendant could not have been prejudiced by the allegations of the second count of plaintiff's petition, and we do not deem it necessary to discuss the authorities cited by the defendant under this proposition. Defendant further argues under the proposition 1 that even if the petition had stated a cause of action of fraud, the evidence wholly failed to prove a case of fraud, and admits in its brief under proposition three, which will hereinafter be discussed, that there was in the petition as amended an allegation of fraud, and alleges that the court erred in refusing to require the plaintiff to elect as to whether he would proceed on the theory of implied warranty or on the theory of fraud.

■ These contentions of the defendant are without merit. An examination of the amended petition of the plaintiff and the allegations made therein and as stated above clearly and without question reveal

that the plaintiff by his petition predicates his action upon fraud, misrepresentation and deceit upon the part of the defendant and not upon the theory of implied contract. The court correctly overruled the demurrer of the defendant to the plaintiff's petition.

The undisputed facts of this case as shown by the evidence are that the defendant, Gold Kist Peanut Growers Association, was in 1958 engaged in the business of processing peanuts for seed purposes and for sale to distributors to the general public; that in May of 1958, the defendant corporation sold to John Biles, a seed dealer of Chandler, Oklahoma, a quantity of seed peanuts for resale as peanut seed; that the defendant sold such peanut seed in sacks or bags bearing the name Gold Kist Peanut Growers Corporation's name or emblem thereon and that each of such bags had affixed thereto a tag which stated that the seeds had an 80% germination test; that within a few days after receiving the seed from the defendant corporation, the dealer Biles sold 1800 pounds of the seed peanuts from Lot No. 20306 to the plaintiff Waldman; that the plaintiff on the following day, from the seed which he had bought and received from the dealer, planted a forty-acre tract, which tract was adequate for the planting and growing of peanuts and had been properly tilled and prepared by the plaintiff; that later the plaintiff discovered that the peanuts had not germinated properly throughout the forty-acre field, and that the growth was not consistent, there being strips where no plants. had grown at all—of six or eight feet in length—and that condition existed generally over the whole field; that the forty-acre field averaged 39½ bushels per acre; that the plaintiff had farmed and raised peanuts for sixteen years and that if he had had a normal stand or crop upon the forty acres that it would have averaged 70 bushels per acre, and that the market price that year for the type of peanuts which he raised was $3.15 per bushel, and that by reason of the defective stand or crop, he had lost 960 bushels of peanuts;

that the sacks for that quantity of peanuts would have cost him $66.50, and the transportation to the market in Chandler $28.00; that after the plaintiff had discovered that part of the crop had rotted and did not germinate he reported that fact to John Biles, the dealer, who came to his farm and examined the field and that he also notified the Department of Agriculture of the State of Oklahoma of the situation and asked them to come out to his place and make a test of the remaining seed that he had on hand, and that they came and took samples at his home in June. Mr. Art Grall, called as a witness for the plaintiff, testified that he was an official inspector for the State Department of Agriculture; that after he received a call from Mr. Waldman on June 9th, he went to Mr. Waldman's farm and took a sample of peanuts from Lot No. 20306 bearing the label of the Gold Kist Peanut Company, the defendant, and that he also took a sample from the same lot at the John Biles feed store on the same day, and packaged the samples, sealed them, took them to Oklahoma City and turned them into the laboratory of the State Department of Agriculture; that he also procured the tags attached to the sacks of peanuts from which he took the samples, identified said tags, and such tags were offered and received in evidence; that such tags show that the contents of the bags has been treated with Arasan, and a germination test of 80%. Mr. Grall also testified that on the 12th day of May that he pulled a sample from the same Lot No. 20306 at the Gold Kist plant and also sent it to the state laboratory for examination; that he had seen a report on it and that it checked okay.

Mr. Buford Jones, called by the plaintiff, testified that he is the official supervisor of the seed laboratory of the Department of Agriculture, and that the tests of the seeds in question were made under his supervision; that he prepared the information contained in the report of same, identified the reports of the samples sent in by the seed inspector, Art Grall. Plain-

tiff's Exhibit "7", which is the official report, was received in evidence by the court and this official report disclosed that samples were taken and showed a germination of 80%; that the official analysis showed a germination of 55%. This witness also identified a letter which was received in evidence which was the report to the defendant company upon the tests made which informed the defendant of the discrepancy in the germination percentage of from 80% to 55% upon the official analysis. This report also advised the defendant "you can see from the above analysis that the germination is considerably below that shown on the tag and since you only have one bag of this seed we assume that it will be returned to the shipper. Although this seed when sampled was shown to be Arasan treated, the seed certainly does not appear from visual observation to be adequately treated. This sample molded very easily during germination. Because of the wide variation of our test and that shown on the tag, we are making a retest and will advise further as soon as it is completed."; that on the 19th day of June a retest was made and that the retest showed germination was 48%.

At the close of plaintiff's evidence the defendant demurred to the evidence of the plaintiff, which demurrer was overruled by the court, and the defendant called as its sole witness Mr. Paul West who testified that he was in 1958 the assistant manager of the defendant company. He testified at length to the process, the manner in which peanuts are prepared and processed for sale as seed and that peanut seed in question in this case was handled, processed, prepared for sale to the dealers in the usual and customary manner and method used by the defendant company in the preparation of seed peanuts. The witness testified that in 1958 they sold four lots of Argentine peanut seed of the type sold to the plaintiff; that in March, after the peanuts had been lotted up, the defendant pulled samples from the various lots and mailed them to the Department of Agriculture for tests as

to germination, and that the defendant received two reports, one showing 92% germination and one showing a germination of 93%. These reports were made on form reports of seed analysis which carried the annotation: "The above analysis is correct for the same received and not from the lot from which the sample was drawn unless it is representative of the lot." And after receiving the reports from the State, that they ran further germination tests on each of the lots which they termed a variation test, and that they all ran on 89% to 94%; that the peanuts were then treated with Arasan and put up in burlap bags and placed their tag germination test tags on each bag, relying upon the test report that they had from the State laboratory; that the defendant never made any false representations to any of the people concerned, and that the defendant believed that the seed that they sold were good seed.

On cross examination the witness testified that he had examined the field of the plaintiff after the complaints made and that he found the ground in good condition; that 55% germination test is not a good test and that he would not plant that test seed.

At the close of all the testimony, the defendant again demurred to the evidence of the plaintiff on both causes of action and moved the court to direct a verdict for the defendant, which demurrers and motions for directed verdict were overruled by the court.

In its brief the defendant argues that even had the petition stated a cause of action on fraud the evidence wholly fails to prove anything that looks like fraud, and wholly fails to meet the test laid down in Pugh-Bishop Chevrolet Co. v. Duncan, 176 Okl. 310, 55 P.2d 1003. Said case cited is not applicable to the facts in this case as it was a case in conversion, but in the case the court stated:

"Fraud is a question of fact, and must be proved by party alleging fraud by clear and satisfactory evidence."

■ In the summary of the testimony above stated, we must conclude that the plaintiff by his evidence supported the allegations of his petition.

Further in the Pugh-Bishop case, supra, the court states:

"In this jurisdiction technical accuracy in a pleading is not required. A petition, which in ordinary language alleges facts sufficient to show that plaintiff has been wronged, how he has been wronged, the damage he has sustained thereby, and that defendant perpetrated the wrong complained of and is liable therefor and asks judgment for the damage, is sufficient to state a cause of action, and a demurrer thereto is properly overruled."

Mr. Jones of the State Department of Agriculture was asked:

"And then if their germination test shown is off from what they should be, you have authority to stop the sale on it?

"A. Yes, sir.

"Q. And, of course, so far as you know, there never was any sales stopped here?"

To which last question objection was made and the objection was by the court sustained. That an offer of proof was made as follows:

"Comes now the defendant and offers to show by this witness, if permitted, that no stoppage was ever issued against the sale of any seed by the Department of Agriculture and we offer to prove that by him."

To which offer the plaintiff objected and the objection was sustained.

■ The defendant argues that this evidence was very material in that it would show that the Department did not consider the seed defective enough to order the sale stopped. We do not think that the court erred in excluding this testimony as any action upon the part of the Department of Agriculture in reference to any further sale of the seed would have been an administrative act upon the part of the Department, could not be binding upon the plaintiff and would have no probative value in either proving or disproving the issue in this case. And

2. The court erred in admitting incompetent evidence, and complains that the court admitted into evidence the statement of the plaintiff, based upon his past experience as a peanut farmer and as a thresher, his opinion as to how many bushels per acre the forty-acre tract in question would have yielded had there been a normal stand of peanuts, and whether or not it would have cost him, the plaintiff, any more money to combine the forty-acre field with half a stand and harvest it as it would have been with a normal stand.

And the defendant also complains, in this connection, that the plaintiff's witness, Warren Seaba, who testified he was a peanut farmer and farmed the land directly across the road from that of the plaintiff, was allowed to testify that his land and that of the plaintiff's was comparable with each other, was the same type of field land, and that he had a good stand. The defendant claims that this testimony was speculative, was incompetent and was prejudicial to the rights of the defendant.

■ With this argument and contention we cannot agree. The evidence discloses that these two witnesses have been qualified by the plaintiff as long-time farmers engaged in the planting and production of peanuts, and the court by overruling the objection to their testimony determined their qualifications as experts in their field and received their testimony as expert testimony. It is a well established rule of evidence that whether a witness is sufficiently qualified to testify as an expert is a preliminary question for the determination of the court, and that the qualification of the witness to testify as an expert is a matter within the sound discretion of the trial court.

Yates v. Garrett, 19 Okl. 449, 92 P. 142; Shawnee Gas & Electric Co. v. Griffith, 96 Okl. 261, 222 P. 235; Chickasha Cotton Oil

Co. v. Hancock, 306 P.2d 330 (Okl.); Continental Oil Co. v. Elias, 307 P.2d 849, (Okl.); Tuck v. Buller, 311 P.2d 212, 66 A.L.R.2d 1043.

It has been held that farmers are competent as experts to testify to matters of opinion requiring peculiar knowledge of their particular calling. Mayhew v. Glazier, 68 Colo. 350, 189 P. 843; Chicago R. I. & P. Ry. Co. v. Johnson, 25 Okl. 760, 107 P. 662, 27 L.R.A.,N.S., 879.

■ The defendant complains of admission in evidence by the trial court of plaintiff's Exhibits "7" and "8" on the ground that said exhibits were not properly identified. These exhibits were official reports of the Oklahoma State Department of Agriculture of the tests made by the Department of samples of the seeds in question in this case. The witness, Buford Jones, Supervisor of the Seed Laboratory of the Department, identified these exhibits as the official reports of his Department. He stated that he conducted and supervised the testing of the germination of the seeds and that he prepared the information contained in the reports. We think that the court properly held that the exhibits were sufficiently and properly identified, and did not err in admitting the same in evidence.

On his proposition Three, the defendant complains that the court erred in his instructions to the jury, specifically in giving Instructions Nos. 2, 3, 4, 5, and 6, over the objections of the defendant, and in refusing to give defendant's requested instructions, Nos. 1 to 7, inclusive. The defendant complains that the court's instructions did not correctly advise the jury on the theory of fraud and as to the weight of evidence necessary to sustain a verdict of fraud.

We have carefully considered all of the instructions given by the court, and especially those complained of by the defendant, and we find that the court's instructions as given substantially state the law applicable to the issues raised by the evidence and as disclosed by the record. In view of the complaint made by the defendant that the court failed to instruct the jury upon certain issues raised by the evidence and that it was the court's duty to so instruct, we have thoroughly and completely examined the entire record in this case and from this examination we are unable to find where the court committed any error in that regard, and that the instructions given, fairly present all of the vital issues arising in the trial of the case.

In the case of Wingate v. Render, 58 Okl. 656, 160 P. 614, 617, the court defines the necessary elements in an action of fraud:

"To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) that all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery."

This definition of the necessary elements in an action of fraud was cited, set out at length and adopted by the court in Adams v. Small, 151 Okl. 244, 3 P.2d 661, 662. The instructions complained of in this case set forth and define the necessary elements in an action of fraud in the very words and language of the Wingate v. Render case, supra.

The defendant's requested Instruction No. 2, which was tendered by the defendant and refused by the court, reads:

"The proof of fraud alleged by plaintiff in this case must be established by him by clear, strong and convincing evidence and such as to rebut every presumption of honesty and fair dealing and that a mere preponderance of

the evidence is not sufficient to justify a verdict for the plaintiff."

Defendant's Instruction "3", also refused by the court, reads:

"The burden of proof is upon plaintiff to establish that defendant was guilty of fraud by the kind of unusual evidence elsewhere defined for you in these instructions before the plaintiff would be entitled to any recovery."

We think the court correctly refused to give instructions of defendant, Nos. "2" and "3", as the defendant by these requested instructions sought to place a greater burden of proof upon the plaintiff to prove the allegations of fraud by a preponderance of the evidence. The cases cited by the defendant in support of this proposition, we find upon examination thereof, do not support the contention of the defendant but hold that where fraud is charged it becomes a question of fact which must be proved by the party alleging fraud and cannot be inferred from facts consistent with honesty of purpose and is applicable only to the character and degree of proof presented by the one charging fraud and does not support the argument of the defendant that a preponderance of the evidence is not sufficient to justify a verdict for the plaintiff. In this case the plaintiff conducted his case upon the direct and specific allegations of fraud. Evidence tending to establish the allegations was properly received by the court. Inferences and circumstances played little part in the case. Facts constituting fraud alleged by the plaintiff and supported by the evidence were set forth and specified in the court's Instruction No. "4", which instruction reads:

"If you find by a preponderance of the evidence that the defendant made certain false and fraudulent representations concerning the quality of peanut seed, that said representations were false and the defendant knew or reasonably should have known that the statements were not true, and that the seed was not as represented by the defendant all as alleged in the plaintiff's petition, and if you further find that the plaintiff relying on such representations purchased the peanuts for use of seed, that he planted the seed and the seed because of such false and fraudulent representations failed to germinate and mature as it would have done had it been as represented, then; your verdict will be for the plaintiff and against the defendant.

"On the other hand, if you fail to so find, your verdict will be for the defendant."

We held in the case of Societe Titanor v. Sherman Machine & Iron Works, 172 Okl. 213, 45 P.2d 144, 146 (1935), that in an action of fraud where such facts were established by a preponderance of the evidence it was sufficient. Fraud is a fact to be established as any other fact and where the jury has passed upon that question if there is any evidence in the record reasonably tending to support the verdict, the same will not be disturbed in this court on appeal. L. L. Tyer & Son v. Wheeler, 41 Okl. 335, 135 P. 351, which case was cited and followed in Cavanagh v. Johannessen, 57 Okl. 149, 156 P. 289.

The contention of the defendant that the court erred in refusing to give defendant's requested instructions numbered "4", "5", "6" and "7" is not urged by the defendant in its brief. From an examination of such instructions we find that the court properly refused to give such instructions and did not err in the refusal of same.

From a complete examination of the record in this case, we are unable to find where the court committed any error in the proceedings; that the instructions given fairly presented all of the vital issues arising in the trial of the cause; that there was ample testimony sufficient to support the finding of the jury, and that under the rulings of this court where there is competent evidence reasonably tending to support the verdict of the jury the same will not be disturbed on appeal. See City of McAlester

v. King, Okl., 354 P.2d 777; Burke v. Scott, Okl., 361 P.2d 272.

The judgment of the trial court is affirmed.

The Court acknowledges the aid of the Supernumerary Judge, Leslie Webb, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.