NIXON ET AL., RECEIVERS ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY *v.* FULKERSON.

Opinion delivered March 19, 1917.

1. EVIDENCE—MEDICAL EXPERTS—QUALIFICATIONS.—A person to qualify as a medical expert must be possessed of such experience, skill or science in the particular subject or inquiry as entitles his opinion to pass for scientific truth. His knowledge must be knowledge acquired either from actual study or long experience in the particular field toward which the inquiry is directed.

2. EVIDENCE—MEDICAL EXPERTS.—Medical experts may give their opinions, if skilled in the science and practice of medicine.

3. EVIDENCE—PERSONAL INJURIES—MEDICAL EXPERT—COMPETENCY.—In an action for damages from personal injuries, the testimony of a physician of the mechanotherapist school, who had practiced eight or nine years, claimed by education and practice to be familiar with

diseases of the muscles and bones, and dislocations and such matters, and was the graduate of a medical college, is admissible as expert testimony.

4.  NEGLIGENCE—PERSONAL INJURIES—SPEED OF RAILWAY MOTOR CAR—OPINION OF WITNESS.—Plaintiff alleged that his horse was frightened by a railway motor car which passed him at a high rate of speed, emitting loud sounds, which caused the horse to run away, causing the damage complained of. *Held*, it was proper to permit plaintiff to testify that if the motor car had been running at a reasonable rate of speed, that he could have gotten out of the way and saved himself from injury, there being other competent testimony showing the high speed of the motor car.

5.  NEGLIGENCE—OPERATION OF RAILWAY MOTOR CAR AT DEPOT.—Unless timely notice of its approach is given, it is the duty of a railway company to exercise ordinary care in the operation of a motor car on its tracks, so as to prevent injuries to persons and property likely to be at its depots when such motor cars pass.

Appeal from Washington Circuit Court; *J. S. Maples*, Judge; affirmed.

*B. R. Davidson* and *W. F. Evans*, for appellants.

1.  Doctor Fagan's testimony was inadmissible. He was not an expert. 23 Ark. 730. The company was not compelled to regulate the speed of its car so as not to frighten a horse behind a car that could not be seen, and the first instruction for plaintiff was error. The court should also have given Nos. 1, 3 and 4 for defendant. 63 Ark. 177; 54 *Id*. 431; 10 A. & E. Ry. Cases (N. S.) 100; 4 A. & E. (N. S.) 483.

2.  The issue as to loud and exciting noises made by the car should not have been submitted to the jury. No unnecessary noise was proven to have been made by the car. Besides, the company was not liable for frightening a horse of one upon the premises for the purpose of delivering freight to be shipped, by the necessary noises of a passing car. 58 S. E. 705; 51 A. & E. Ry. Cases, 37 and notes; 46 *Id*. (N. S.) 259-60, etc.; 15 *Id*. 448-9, 455; 11 *Id*. 275; 111 N. W. 281.

3.  The company owed no duty to appellant, unless they had discovered his danger, or that his horse was in a position to be or was frightened. 13 A. & E. Ry. Cases, 632; 123 Ark. 515.

4. The operation of the car was not the proximate cause—the breaking of his line was. A peremptory instruction should have been given for defendant. 144 Fed. 56; 69 *Id.* 808; 101 *Id.* 315-322.

*H. L. Pearson,* for appellee.

1. Doctor Fagan was competent. 94 Ark. 538-44.

2. A high and reckless rate of speed was negligence *per se* when a car is running through a populous town. 129 S. W. 558; 121 *Id.* 648; 79 Ark. 248; 89 *Id.* 261; 100 *Id.* 232; 106 *Id.* 492, 503; 164 Fed. 785; 66 So. 633.

3. No contributory negligence is shown. 71 Pac. 371; 71 *Id.* 371.

4. Due care must be used—the speed must be regulated. 6 Ind. 141; 7 *Id.* 553. A railroad is liable to a trespasser for a failure to moderate its speed in a town or city. 54 So. 179. See, also, 30 So. 285.

5. The question of noise was properly submitted to the jury. 56 Ark. 387.

6. There was no contributory negligence, and the breaking of a line was not the proximate cause, but the reckless speed and unnecessary noise. 56 Ark. 387. There is no error in the instructions.

Humphreys, J. Appellee brought suit in the Washington Circuit Court against appellant, seeking to recover damages in the total sum of $2,950 for injury to himself and property, on account of the alleged negligence of appellant in running a motor car at an unusual, reckless and negligent speed, and for causing said motor car to emit unusual and loud noises, so as to frighten his horse and cause him to run away. Appellee alleged that at the time the runaway occurred, he was in his buggy engaged in directing the loading of a car of wheat about a hundred yards west of the passenger depot near a sidetrack paralleling the main track in Prairie Grove, Arkansas.

Appellant filed a demurrer; also an answer denying each material allegation in the complaint.

The cause was heard upon the issues and oral evidence adduced, and a verdict returned by the jury in favor of appellee for $50, upon which judgment was rendered.

It is contended that Dr. H. G. Fagan did not sufficiently qualify to give expert testimony as to the nature and extent of the injury suffered by appellee. Doctor Fagan had studied and graduated from a school unknown to the skilled surgeon and learned counsel of the railroad company, towit: The American College of Methanopy, Chicago. He asserted that by profession he was a "mechanotherapist." Further explanation revealed the fact that a "mechanotherapist" is known to the laity as a "drugless healer," or a "rubbing doctor." This physician claimed by education and practice to be familiar with "diseases of muscles and bones, and dislocations and such matters."

(1) The rule with reference to experts is that the witness must be "possessed of such experience, skill, or science in the particular subject or inquiry as entitles his opinion to pass for scientific truth. The knowledge contemplated by the rules is knowledge acquired, either from actual study or long experience, in the particular field toward which the inquiry is directed." 6 Thompson on Negligence, § 7753.

(2) This court has fixed the test that medical experts may give their opinions if skilled in the science and practice of medicine. *Tatum* v. *Mohr,* 21 Ark. 349; *Thompson* v. *Bertrand,* 23 Ark. 730.

(3) Doctor Fagan testified that in addition to being a graduate of a medical college, he was a practitioner of eight or nine years' experience, thereby bringing himself well within the rule laid down by Mr. Thompson and the two Arkansas cases *supra,* with reference to the competency of experts. No error was committed in admitting the evidence of the "rubbing doctor."

In any event, no prejudice resulted to appellant by reason of this expert testimony. The testimony of the

lay witnesses as to the extent of damages sustained by appellee to his person and property exceeded in value $50.

(4)    Complaint is made that appellee was permitted to testify that if the car had been running at a reasonable rate of speed, he could have gotten out of the way and saved himself the injury, for the reason, it is said, that. it is opinion evidence. Appellee was in his buggy at the car door, facing west, when he discovered the motor car coming toward him from the west. He described as best he could the entire situation, and then stated that if the car had been running at an ordinary speed, or if he had had any warning, he could have gotten out and saved himself. We can not concur with learned counsel that this is opinion evidence. It was a statement of fact, rather than opinion. He stated it as a fact, and not as an opinion.

Appellant insists that there was no evidence showing that the motor car was being operated at a high, unusual, reckless and negligent speed.

J. A. Nugent, who had been around trains many years, testified touching the speed of this motor car at the time of the injury. These are some excerpts from his testimony: "It was running a good swift gait; there was no doubt about that. According to the way I saw it, it made as good time as any passenger train I ever saw on that track. My judgment would be this: It was as fast as any passenger train runs on that track, at least. It came from behind that depot that way (indicating) just like my hat coming, that is all there is to it." Mr. Nugent first saw the car seventy-five or eighty yards west of the depot, and noticed it last seventy-five or eighty yards east of the depot.

Otto Bollin first noticed the motor car when it was opposite, and again after it passed the depot. The following interrogatories and answers appear in his evidence:

Q.  You saw it after it passed the depot?

A.  Yes, sir.

Q.  How was it running?

A.   It was running fast.

Q.   How far could you see it after it passed the depot until it passed out of your sight?

A.   Well, it was a good piece.

Q.   I will ask you to state to the jury the speed that this motor car was running with reference to the fast speed of other trains or other motor cars.

A.   Well, I don't know; it seems to me like it was going as fast as it could be, and stay on the track.

Q.   Did you, in your judgment, ever see any motor car or train run faster?

A.   No, sir; not on this road.

The following questions and answers appear in the testimony of W. T. Edminston:

Q.   Did you see the motor car coming before it got to the depot?

A.   Yes, sir.

Q.   How far back did you see it?

A.   Something like three hundred yards from the depot.

Q.   When you first noticed it?

A.   Yes, sir, coming toward the depot.

Q.   Did you see it pass right on through?

A.   Yes, sir, it came right by me.

Q.   Mr. Edminston, you have seen trains and motor cars run lots of times, haven't you?

A.   Yes, sir; I have.

Q.   I will ask you to state how fast this motor car was running, whether slow or fast.

A.   Well, sir, I don't see how it could run much faster unless it had wings.   It was going "some."

Q.   Was it going that way when you first saw it?

A.   I couldn't pay much attention to it until it got close to the depot; when it come up, it come up right then, and went on by, right then; I thought it would jump the track when it struck the switch, but they seemed to know more than I did; it didn't.

H. E. Morton and J. H. Tharp gave testimony of like tenor on the question of speed.

The appellee, J. M. Fulkerson, referred to the speed of the car in the following manner: "I seen the car coming from the west like lightning. They were coming so fast and making such a racket I tried to get away, but before I could get started, they come whizzing by like lightning, scared my horse and he started to run. I never seen nothing coming like it did, in my life. I have seen trains run sixty miles an hour. It was—"

At this point, attorney for appellant interrupted with an objection, and after quite a difference between counsel as to the manner of examining the witness, the court inquired:

"State whether or not it was unusual speed."

"A. I say, most emphatically, it was. It was running like—"

Appellant's testimony tended to show that the car was coasting through at the rate of about fifteen miles an hour. Prairie Grove has about eight hundred or a thousand inhabitants. This was a hand-car propelled by motor power, and its maximum speed rate was eighty miles an hour. Hand-cars have no bells or whistles with which to signal their approach. Appellee was examining a car of wheat his hands had been loading to see if it was ready for shipment. The car had been placed on the side-track near the depot to be loaded by appellee. He was there by invitation, and in no sense a trespasser. While engaged in loading and inspecting the car, it was incumbent upon the appellant carrier to exercise ordinary care for his safety. A great many people go to depots to transact business, in buggies, wagons, etc., and it is the duty of railroad companies to use ordinary care in running their trains or cars into or by places of this character, either by signaling their approach in time for people to protect themselves and their property or by reducing the rate of speed so that the train or car can be stopped and prevent injury to person or property. Whether such

care was used is a question for the jury in each particular case. In the instant case, there was ample evidence to warrant the submission to the jury of the question whether the car was being operated at a high, unusual, reckless and negligent speed.

Instruction No. 1, asked by appellee, is in accord with law, and it was proper to give it. Instructions 1, 2, 3 and 4, asked by appellant, are predicated on the idea that hand-cars propelled by motor power can be run at any speed when approaching depots, regardless of conditions. The instructions are erroneous as applicable to the facts in this case, and were properly refused.

(5) Likewise, there was evidence tending to show that in the operation of the car, loud and exciting noises were emitted, calculated to frighten a horse. Appellant produced evidence tending to show that no such noises were made. Unless timely notice of the approach of such a car is given, it is the further duty of carriers to exercise ordinary care in the operation of such car so as to prevent injury to persons and property likely to be at depots; and it is a question for the jury to say whether such care was exercised. There is ample evidence in the record to warrant the submission of this issue to the jury. Instruction No. 2, asked by appellee and given by the court, properly submitted this question to the jury. Instruction No. 5, asked by appellant and refused by the court, assumes that railroad companies are not compelled, in the operation of motor cars at any time or place, to exercise ordinary care to regulate the noise so as to avoid frightening a horse that is not seen or known to be in close proximity to the track. In this assumption, the instruction is erroneous and the trial court properly declined to give it. Instruction No. 6, asked by appellant and refused by the court, is erroneous in that it assumes that without warning or notice, when approaching or passing depots, all noises incident to operation may be emitted. However, instruction No. 1, given on the court's own motion, fully covered instruction No. 6, asked by ap-

pellant, so no prejudice could have resulted by refusal to give the instruction.

It is insisted that the breaking of the driving line by appellee was the proximate cause of the injury. We do not think so. All the evidence tends to show that the horse was frightened and ran away on account of the operation of the motor car. If the car was operated by the railroad company in a negligent manner, which was a question for the jury, then the company was responsible for all the consequences resulting directly from this negligence. The breaking of the line was an incident to the runaway. The line was broken in an effort to hold the horse after he began to run. *Railway Co.* v. *Roberts,* 56 Ark. 366.

In the last place, it is contended that the undisputed evidence showed that appellee was guilty of contributory negligence, and that the trial court should have given the peremptory instruction asked by appellant on this question. We think there was a sharp conflict in the evidence on this issue, and instruction No. 3, given by the court on its own motion, properly submitted the question.

Finding no error in the record, the judgment is affirmed.