Rock *v*. Deason & Keith.

Opinion delivered November 15, 1920.

1. SALES—WHEN CONTRACT COMPLETE.—Where an order for a carload of flour was taken subject to the seller's approval, the seller's acceptance constituted a completed contract.

2. SALES—FOOD CONTROL ACT—CONSTRUCTION.—The Food Control Act of Congress of August 10, 1917 (40 Stat. at L. 280), was not retroactive, and the rules promulgated under that act by the President did not affect sales of food completed prior to the passage of that act, though delivery was to be made subsequently.

Appeal from Benton Chancery Court; *Ben F. Mc-Mahan*, Chancellor; reversed.

STATEMENT OF FACTS.

Appellants sued appellees in the circuit court for damages for breach of a contract to purchase a car of flour and feed.

Appellees admit that they gave to appellants an order for a car load of flour which was to be shipped on September 15, 1917, but allege as a defense to the action that the National Government took charge of the manufacture and sale of the flour and prohibited its sale at the price they had contracted to pay for it, whereby they were prohibited without fault on their part from carrying out their agreement to purchase the flour.

They prayed that the cause be transferred to equity and that the contract be canceled. The circuit court transferred the case to equity without objection on the part of appellants.

The traveling salesman of one of the appellants took an order from appellees for a car of flour on August 7, 1917. The price of the flour was named in the order and the time of shipment was on September 15, 1917, or sooner. The order was subject to the acceptance of one of the appellants which was engaged in the manufacture of flour. That company received the order from its salesman, and on August 9, 1917, wrote a letter to appellees accepting the order and asking for shipping instructions. Other correspondence passed between the parties

in which appellants insisted upon appellees performing their contract by receiving the flour and appellees asked for a reduction in the purchase price because in the meantime the price of flour had gone down. Appellants refused to make any reduction in the price. Hence this lawsuit.

The court below found the issues in favor of appellees and dismissed the complaint of appellants for want of equity. The case is here on appeal.

*McGill & McGill,* for appellants.

The only specific defenses set in the answer are: (1) that the assignment to Chas. F. Rock was fictitious and fraudulent, and (2) that defendants were prohibited by the Federal food regulations from accepting the flour at the contract price.

(1) It is shown by the uncontradicted evidence that the assignment was valid and binding.

(2) The contract was not invalid at the time it was executed. In the absence of a stipulation in a contract relieving a party in case of war, the existence of a state of war is no excuse for a breach of the contract whether the contract is concluded before or after the commencement of hostilities. Ann. Cases 1918 A, 14; Ann. Cas. 1918 C, 390; 3 A. L. R. Cases 1-21 and note. The Food Control Act and regulations would not have prevented defendants from completing their purchase, even if there had been no express provision excluding its application from existing contracts. However, it was expressly provided that it should not be retroactive. See notes to 3 A. L. R., p. 35; 207 S. W. 72. The contract here was really completed August 7th by the signature of the mill company and acceptance by defendants. The Food Control Act was not passed until August 10 and its rules were not promulgated until August 24th.

HART, J. (after stating the facts). The decision of the chancellor was wrong. The order signed by appellees on August 7, 1917, constituted an offer to buy the car load of flour from appellants and the acceptance by

appellants on August 9, 1917, constituted a completed contract. *Emerson* v. *Stevens Grocer Co.*, 95 Ark. 421; *Cage* v. *Black*, 97 Ark. 613; and *Emerson* v. *Stevens Grocer Co.*, 105 Ark. 575.

In a case note to 3 A. L. R., page 35, it is said that the war measures embodied in the rules of the milling division of the United States Food Administration constitute no defense to an action for the breach of the contract to purchase flour, such regulations not operating, nor being intended to operate, to invalidate prior contracts and the case of *J. C. Lysle Milling Co.* v. *Sharp* (Mo. App.), 207 S. W. 72, is cited in support of the text. That principle controls here. The act of Congress relating to the Federal control of production of food and fuel was passed on August 10, 1917, and the section which controls here may be found in chapter 53, section 13 of 40 U. S. Statutes at Large, page 280, and Barnes' Federal Code, 1919, section 10, 191. The section provides, in substance, that whenever the President shall find it necessary to secure an adequate supply of necessities for the support of the army or the maintenance of the navy, or for any other public use connected with the common defense, he is authorized to requisition and take over, for the use or operation by the Government, any factory or plant, or any part thereof, in or through which any necessities may be manufactured or produced and to operate the same.

The section further provides that the President is authorized to prescribe such regulations as he may deem essential for carrying out the purposes of this section. It will be noted that the Food Control Act was not passed until August 10, 1917, and the rules were not promulgated by the President until August 24, 1917. The section of the statute in question does not purport to act retroactively.

As we have already seen, a binding contract between the parties was completed on the 9th day of August, 1917. This being before the passage of the Food Control

Act by the Congress of the United States, the appellees could not excuse themselves from performing the contract. The fact that they had until the 15th day of September, 1917, to give shipping directions, does not alter the case. The binding force of the contract took effect when the contract was completed, and that was on the day when the appellants accepted the offer of appellees for the carload of flour.

W. A. Chain, the general manager of the Security Flour Mills Company, was a witness for appellants. According to his testimony, the company received the order from Deason & Keith dated August 7, 1917, and accepted it in a letter mailed to them on August 9, 1917. The company asked for shipping instructions from Deason & Keith. The latter refused to give them or to receive the flour. The company was then compelled to sell the flour to other parties at a reduced price, so that it suffered a loss in the sum of $283.50.

The chancellor should have found that the appellees breached the contract, and have entered a decree in favor of appellants for the loss suffered.

It follows that the decree must be reversed and the cause remanded for further proceedings according to law and not inconsistent with this opinion.