ASSOCIATED SEED GROWERS, INC. *v.* JOHNSON.

5-1114                     297 S. W. 2d 934

Opinion delivered January 21, 1957.

[Rehearing denied February 18, 1957]

236

*Warner, Warner & Ragon,* for appellant.

*Batchelor & Batchelor* and *Ralph W. Robinson,* for appellee.

SAM ROBINSON, Associate Justice. The appellant, Associated Seed Growers, Inc., is engaged in producing and selling various kinds of seeds. The appellees purchased Logan Bean seed from appellant; the beans produced from such seed were defective, and, therefore, unsalable. Appellees filed this suit against the seed company, alleging the beans were unsalable because they were afflicted with a disease known as "common bean mosaic"; that the seed company had given express and implied warranties that the seeds were resistant to such a disease, which is seed borne. This suit is based on a breach of such alleged warranties. There was a verdict and judgment for appellees in the sum of $2,500.

The evidence was sufficient to take the case to the jury on the question of whether the beans were defective due to common bean mosaic. Appellant produced weighty evidence to the effect that the unsalable condition of the beans was not due to that disease, but there is substantial evidence to the contrary. It is not disputed that the beans were unsalable. Marshall Johnson, Harold Ballentine and Boyce Wofford qualified as experts, through many years of experience by producing and dealing in beans, testified that in their opinion the beans were unsalable because they were afflicted with common bean mosaic. Appellant questions the qualifications of the witnesses to testify as experts. True, they were not trained pathologists, but they had long years of experience with beans, and a witness may qualify as an expert by experience. The court said, in *Nixon et al., Receivers* v. *Fulkerson,* 128 Ark. 172, 193 S. W. 500: "The

rule with reference to experts is that the witness must be 'possessed of such experience, skill, or science in the particular subject or inquiry as entitles his opinion to pass for scientific truth. The knowledge contemplated by the rules is knowledge acquired, either from actual study or long experience, in the particular field toward which the inquiry is directed.' ''

The principal issue on appeal is whether the seed company gave an express or implied warranty with regard to the fitness of the seed. Appellee, Johnson, acting for himself and the other appellees herein, bought the seed from appellant. Johnson had one of appellant's catalogues; he testified that he studied the catalogue and referred to it in ordering seed. Furthermore, it was stipulated that Johnson used the catalogue in buying seed from appellant. The catalogue described the seed as being resistant to common bean mosaic.

Ark. Stats. § 68-1415 provides: *"Implied warranty of quality or fitness.*—Subject to the provisions of this act (§§ 68-1401—68-1480) and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

''(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

''(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.''

Ark. Stats. § 68-1412 provides: *"Express warranty defined.*—Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if

the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon . . ."

Appellant does not insist that the statement in the catalogue to the effect that the beans were resistant to common bean mosaic, coupled with the statutes set out above, would not be sufficient to constitute an express or implied warranty if that were the entire picture. But, appellant says that in making the sale of the beans, it limited the warranty or disclaimed the warranty. This brings us to a consideration of the facts surrounding the actual sale. The transaction came about in this manner: Johnson called Henry Hicks, the manager of appellant's Memphis branch, and ordered the Logan Bean seed. Hicks told him that they did not have the seed at Memphis, but thought he might supply them out of their branch at Omaha, Nebraska. After talking to Johnson, Hicks ascertained that the seed were available at Omaha and wired Johnson that they would be shipped. The telegram stated: "SHIPPING TODAY FROM OMAHA VIA TRUCK TWENTY BAGS LOGAN. THANKS." On the same day that the telegram was sent, Hicks wrote to Johnson as follows: "Following our long distance telephone conversation this morning we found that Logan beans were available at our Omaha warehouse and wired you that we were instructing immediate shipment via truck freight. Accordingly we have entered your order as follows: 2,400 lbs. Beans, Logan, f. o. b., Omaha, Nebraska, .29 1/2 per lb., volume discount 10% . . ." In the upper right hand corner of the letterhead, in small type, was printed the following: "We warrant that the seeds, bulbs and plants we sell are, at the time of delivery, as described on the container within recognized tolerances: But we limit our liability on this warranty to the amount of the purchase price of such seeds, bulbs, and plants, and we give no other or future warranty express or implied. Associated Seed Growers, Inc." The tags on the sacks of beans containing the name and address of the purchaser also had printed thereon the identical disclaimer, as above set out. This disclaimer also appeared on the invoice.

The problem is: Was it a question for the jury to decide as to whether the disclaimer was effective in the existing circumstances. In the first place, it could be said that the contract of purchase was completed when the seed company accepted the order from Johnson by wiring him to the effect that the beans were being shipped. Evidently both parties considered there had been an offer and acceptance. It is not reasonable to believe that Hicks would have taken the liberty of shipping the beans unless he had an order from appellees. Even if it could be said that the contract was not consummated until something further was done by the purchaser, the fact that he did not attempt to cancel the order upon receipt of the telegram left nothing else to be done by either party to complete the contract. Judge Hart said, in *Rock* v. *Deason & Keith,* 146 Ark. 124, 225 S. W. 317: "The order signed by appellees on August 7, 1917, constituted an offer to buy the car load of flour from appellants and the acceptance by appellants on August 9, 1917, constituted a completed contract." In the case at bar, the order was received and accepted by the seller without anything having been said regarding a disclaimer of the express or implied warranty that then existed. Of course, without both parties agreeing to it, a completed contract cannot be modified.

Appellant contends that since the order given by Johnson was not in writing he could not be held to it, and argues that therefore there was no contract, and cites the statute of frauds. But the purchaser would be the one in this instance that could take advantage of the statute, and not the seller, who accepted the order by telegram, and by shipping the seed. Judge Holmes said, in *Edgar* v. *Joseph Breck & Sons Corp.,* 172 Mass. 581, 52 N. E. 1083: "The contract was made when the parties made their oral agreement. It does not matter that at that time it was not evidenced by a memorandum in writing. The statute of frauds could be satisfied later as effectually as at the time. It was satisfied by delivery of the bulbs. The general printed warning on the bill head that the defendant did not warrant seeds could have no effect unless it led to the inference that the old contract

had been rescinded, and a new one substituted, by mutual agreement. Even if the bill had been receipted, it would not have excluded proof of warranty, and, whether there was evidence of a rescission or not, it did not establish one as matter of law.''

The courts are not in accord as to the effect to be given to disclaimers such as the one involved here, and appellant has cited several cases sustaining its theory. But we think the better view is as expressed by Judge Holmes in *Edgar* v. *Joseph Breck & Sons Corp., supra,* which is supported by such cases as *Gray* v. *Gurney Seed & Nursery Company,* 62 S. D. 97, 252 N. W. 3, and *Davis* v. *Ferguson Seed Farms,* Tex. Co. App., 255 S. W. 655, where the court said: ''We will dispose of this contention of the parties by saying that if a warranty was actually made during the negotiations for the purchase of the seed, and not withdrawn or modified, it should be given effect, irrespective of the printed disclaimers.'' See also *Moorhead* v. *Minneapolis Seed Company,* 139 Minn. 11, 165 N. W. 484.

Over appellant's objection, appellees introduced evidence to the effect that other beans of the same kind but of a different variety were planted at the same time, under the same conditions, on land adjacent to that on which the Logan beans were planted; that all of the beans were fertilized and cultivated in a like manner, and that all of the beans developed properly except the Logan beans from the seed obtained from appellant. Appellant contends this evidence was not admissible and cites *J. S. Elder Grocery Company* v. *Applegate,* 151 Ark. 565, 237 S. W. 92. In the case at bar, the evidence was admissible as tending to show that the reason the Logan beans failed to develop properly was due to something other than the condition of the soil and the cultivation of the crop. In the *Elder* case, California blackeyed peas failed to germinate, and the appellate court held it was error to allow the purchaser to show that soy beans planted about the same time did germinate, and that whippoorwill peas planted three weeks later germinated. The court pointed out that soy beans and blackeyed peas are

two different things, and that, although the whippoor-will peas might be the same kind of peas as the California blackeyed peas, they were planted three weeks later. There could have been sufficient moisture in the ground when the whippoorwill peas were planted, and not enough moisture to germinate the California black-eyed peas which were planted three weeks earlier. Thus, it can be seen there is quite a distinction between the *Elder* case and the case at bar. Here, the beans were of the same kind but of a different variety, planted on the same soil at the same time, and fertilized and culti-vated in the same manner.

Appellant makes the further contention that there was no privity of contract between it and appellees here-in, however, the record shows that the beans were pur-chased by Johnson for all of the appellees. Hence, there was a privity of contract. *Kefauver* v. *Price,* 136 Ark. 342, 206 S. W. 664.

Affirmed.