454 P.2d 69

Gary BEAN, Plaintiff-Respondent,

v.

DIAMOND ALKALI COMPANY, a corporation and Twin Falls Feed & Ice, Inc., a corporation, Defendants-Appellants.

No. 10203.

Supreme Court of Idaho.

May 12, 1969.

Martin, Chapman, Martin & Lyons, Boise, for appellants.

Rayborn, Rayborn, Webb & Pike, Twin Falls, for appellee.

McFADDEN, Chief Justice.

Respondent Gary Bean, a farmer residing near Filer, Idaho, has for a number of years in his farming operations raised onion seed. He instituted this action as plaintiff, alleging in his amended complaint a breach of warranty of a chemical compound applied to 4.8 acres of onions, causing him $3,100.00 damages in loss of crops. Appellant Diamond Alkali Company, a corporation, manufactured the chemical, which appellant Twin Falls Feed & Ice, Inc., sold to Bean. The case was tried before a jury which returned a verdict in favor of Bean. The two corporate defendants appealed from the judgment entered following the verdict.

Briefly, the facts developed at the trial were that respondent Bean had discussed with an employee of Twin Falls Feed & Ice, Inc., the use of a pre-emergence chemical herbicide produced by Diamond Alkali Company. Bean decided that this herbicide should be used on a field which he was preparing to plant to onions for the purpose of producing a crop of seed. In 1965 an employee of Twin Falls Feed & Ice, Inc. applied the chemical to the field, which was then sown by Bean. A "very

good stand" of onion plants emerged from the ground, but after a few weeks, portions of the plants discolored and later, within a month and a half, 85% of the plants died. Bean notified appellant Twin Falls Feed & Ice, Inc., but no action was taken regarding the damage. In 1966 Bean plowed up half of the onion field which sustained the greater damage and replanted it to a bean crop which he later harvested and sold. He allowed the better half of the onion crop to mature.

The case was tried solely upon the theory of a breach of warranty, the controversy centering on the cause of the damage to respondent's onions. The appellants denied that the herbicide was the cause and called two expert witnesses, each of whom testified that in his opinion the herbicide probably did not cause the damage. The respondent, on the other hand, contended that the herbicide did cause the damage, supporting his contention with the testimony of several farmers with long experience in the cultivation of onions, each of whom testified that in his opinion the damage was caused by the chemical herbicide applied to the land.

Respondent's witness Robert Blass, whose property is located about two miles east of respondent's property, testified that he had thirteen years experience as a farmer and ten years experience raising onions, including the type of onions involved in this action. He testified that during the same years involved here, he had raised onions on his own farm under soil and climatic conditions comparable to those prevailing on respondent's farm, and that on a 7.7 acre field planted to onions, he used the herbicide in question on a large portion of it: He also left one strip in the field where no herbicide was used, and finally on the rest of the field he used another herbicide. He testified that about half of the plants died where the herbicide in question was used, but that in the rest of the field the plants matured normally. The witness was then asked whether he had an opinion as to what caused the damage, at which point

**34**

the appellants objected on the ground that the question called for a conclusion of the witness and that he had not been shown to be qualified to answer. After further examination regarding the witness's experience in raising onions, the trial court allowed the witness to answer. He testified that he did have an opinion as to the cause of the damage, stating that it was his opinion that it was caused by the chemical herbicide involved here.

Carl Blass, another witness called by the respondent, testified that he had been farming all of his life and had twenty years experience raising onions. He was familiar with onion diseases and had examined Bean's field of onions. When asked if he had an opinion as to the cause of damage to the crop he testified, over appellants' objections, that he had such an opinion and that it was his opinion that the chemical was the cause of the damage. Carl Blass also corroborated the testimony of Robert Blass regarding the so-called "experimental" field planted by Robert Blass.

The respondent also called as a witness a Mr. Whiteley who is employed as a field man by the Northrup King Company. He testified that he had worked on an experimental farm operated by the company which grows seed stock and that he was experienced in watching crops develop. He was familiar with Mr. Bean's 1965 onion seed crop and when asked for his opinion as to the cause of damage he replied, over appellants' objections, that in his opinion the cause of damage was "chemical probably."

The respondent also testified in his own behalf that he had been farming all his life and had been operating his own farm for nineteen years. He had fifteen years experience raising onions and was experienced with their diseases and the vagaries involved in their cultivation. He too stated his opinion, over appellants' objections, that the chemical herbicide caused the damage.

Both appellants strenuously objected to all of this opinion testimony on the ground that the respondent's witnesses had no knowledge of plant pathology and were not qualified as experts to express an opinion. In each instance, however, objections were overruled, and appellants have assigned these rulings as error, contending that this opinion evidence was improperly admitted. The appellants also contend that there is insufficient evidence of a causal connection between the herbicide and the damage to sustain the jury's verdict.

Examination of the record before the trial court reflects that if the testimony of the respondent and his witnesses, each of whom testified that in his opinion the chemical herbicide caused the damage to the crop, was properly admitted, then there is substantial and competent, although conflicting, evidence which was submitted to the jury and this court will not disturb the verdict. Skaggs Drug Centers Inc., v. City of Idaho Falls, 90 Idaho 1, 407 P.2d 695 (1965); Byington v. Clover Club Potato & Produce Co., 91 Idaho 165, 418 P.2d 206 (1966). The focal point of this appeal, therefore, is whether the opinion testimony of the respondent's witnesses was properly admitted over the appellants' objections that the witnesses were not qualified to express an opinion.

As a general rule a witness may testify only as to concrete facts, which are within the scope of his own observation, knowledge and recollection, as distinguished from his opinions, conclusions or inferences drawn from those facts. 31 Am.Jur.2d Expert and Opinion Evidence, § 2, p. 494; 2 Jones on Evidence, § 403, p. 750 (5th ed. 1958). There are, however, several exceptions to this rule, one of which relates to expert testimony. An expert is generally defined as someone possessing a certain skill or knowledge which is beyond the competence of the average layman or juror. Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963); Basye v. Hayes, 58 Idaho 569, 76 P.2d 435 (1938). In Greenstreet v. Greenstreet, 65 Idaho 36, 139 P.2d 239 (1943), this court, quoting from Ausmus v. People, 47 Colo. 167, 107 P. 204 (1909), defined an expert as

" * * * one who has superior knowledge of a subject, and is therefore able to afford the tribunal having the matter under consideration a special assistance, and his knowledge may have been acquired by professional, scientific, or technical training or by practical experience in some field of human activity conferring on him an especial knowledge not shared by men in general." 65 Idaho at 42, 139 P.2d at 242.[1]

A person possessing skill or knowledge qualifying him as an expert is generally allowed to express his opinion as to matters in issue when an opinion would be of appreciable help to the jury in finding the facts. 7 Wigmore on Evidence § 1923, p. 21 (3d ed. 1940); Greenstreet v. Greenstreet, supra; Grohusky v. Atlas Assurance Co., 195 Kan. 626, 408 P.2d 697 (Kan. 1965).

■ In the present case the witnesses called by the respondent were farmers with long experience in raising onions. Although none had formal education or training in plant pathology or herbicides, they were all familiar with the cultivation and harvest of onions and with the diseases to which onions are subject. It is settled that formal training or education is not essential to qualify a witness as an expert. Practical experience will suffice for such purpose. Greenstreet v. Greenstreet, supra; Grohusky v. Atlas Assurance Co., supra; 2 Jones on Evidence, § 413, p. 775 (5th ed. 1958).

In Associated Seed Growers, Inc. v. Johnson, 227 Ark. 235, 297 S.W.2d 934 (1957), which is quite similar to the case at bar, a farmer instituted a breach of warranty action against a seed producer, alleging that beans grown from seed sold by the defendant were afflicted with common bean mosaic. The defendant had warranted that the beans would be immune to this disease. In holding that certain farmers were competent to testify that the unsalable condition of the beans was due to common bean mosaic, the court stated:

"Marshall Johnson, Harold Ballentine and Boyce Wofford qualified as experts, through many years of experience by producing and dealing in beans, testified that in their opinion the beans were unsalable because they were afflicted with common bean mosaic. Appellant questions the qualifications of the witnesses to testify as experts. True, they were not trained pathologists, but they had long years of experience with beans, and a witness may qualify as an expert by experience." 297 S.W.2d at 935.

Similarly in Reid v. Brown, 56 N.M. 65, 240 P.2d 213 (1952), the court held that a cattle rancher, by virtue of long experience in raising cattle, was qualified as an expert to express his opinion that his cattle did not die of natural causes. See also the following cases in which witnesses by reason of occupational experience were allowed to express expert opinions on various issues: Basye v. Hayes, supra; Hobbs v. Union Pacific R.R. Co., 62 Idaho 58, 108 P.2d 841 (1940); Davis v. Nelson-Deppe Inc., 91 Idaho 463, 424 P.2d 733 (1967); Gold Kist Peanut Growers Ass'n v. Waldman, 377 P.2d 807 (Okl.1962). For additional cases see Annot. 49 A.L.R.2d 932 at pp. 961, 973.

■ Whether a witness is sufficiently qualified as an expert to state an opinion is a matter which is largely within the discretion of the trial court. After this determination is made and the opinion evidence is admitted, the weight of the evidence is a matter for the jury. Hobbs v. Union Pacific R.R. Co., supra; Smith v. Big Lost River Irrig. Dist., 83 Idaho 374, 364 P.2d 146 (1961); Davis v. Nelson-Deppe Inc., supra; Reid v. Brown, supra; Gold Kist Peanut Growers Ass'n v. Wald-

1. Webster's Third New International Dictionary (Philip Babcock Gove, ed. 1967) defines an expert as "one who has acquired special skill in or knowledge of a particular subject through professional training or practical experience * * * *broadly*: one having skill or knowledge not possessed by mankind in general * * * *." See also Black's Law Dictionary (rev. 4th ed. 1968).

man, supra. In the case at bar the district court ruled that the respondent's witnesses were qualified as experts. We are unable to say that this determination was an abuse of discretion. Additionally the district court carefully admonished the jury each time it overruled the appellants' objection to opinion testimony and instructed the jury at the close of the case that the opinions would be admitted into evidence, but that in weighing the evidence the jury should take into consideration the background and qualifications of the witnesses. It is our opinion that the trial court did not err in overruling the appellants' objections to this evidence and submitting it to the jury for its consideration.

■ The appellants also contend that the district court erred in refusing to grant their respective motions to dismiss at the close of respondent's case. The record reveals, however, that following these motions the appellants presented evidence in their own behalf and did not renew their motions at the close of the trial. This court has held on several occasions that when a party presents evidence after the denial of his motion to dismiss, he waives the right to assign the ruling as error. Smith v. Sharp, 85 Idaho 17, 375 P.2d 184 (1962); Eckman v. Jones, 85 Idaho 10, 375 P.2d 180 (1962); Barry v. Arrow Trans. Co., 83 Idaho 41, 358 P.2d 1041 (1960); Knauf v. Dover Lumber Co., 20 Idaho 773, 120 P. 157 (1911). Appellants' assignment of error on this issue is therefore without merit.

■ The appellants also contend that the evidence is insufficient to establish a causal connection between the chemical herbicide and the damage to respondent's onions and that the respondent has therefore failed to meet his burden of proof. This contention, however, is predicated upon the hypothesis that the opinion evidence introduced by the respondent is inadmissible. It is our opinion that this evidence is admissible. It is also our opinion that there is substantial, although conflicting, evidence to establish the causal connection and hence, to sustain the judgment.

Judgment affirmed. Costs to respondent.

SHEPARD and SPEAR, JJ., concur.

McQUADE, J., dissenting, and DONALDSON, J., concurring in the dissent.

Plaintiff Bean and the other witnesses called on his behalf were permitted over appellants' objections to assert to the jury that the herbicide Dacthal W–75 caused extensive failure of Bean's onion seed crop. This was prejudicial error for the following reasons.

Expert testimony has been defined generally in the following manner:

"Expert testimony is an opinion of a witness possessing peculiar knowledge, wisdom, skill, or information regarding the subject-matter under consideration, acquired by study, investigation, observation, practice, or experience, *and not likely to be possessed by an ordinary layman or inexperienced person,* who consequently is incapable of understanding the subject under consideration without aid of the opinion of some person who possesses such knowledge, wisdom, skill, practice, or experience." (Emphasis added.) [1]

Wigmore and judicial authorities have recognized that

"the capacity [to give expert testimony] is *in every case a relative one, i. e.,* relative *to the topic about which the person is asked to make his statement.* The object is to be sure that the question to the witness will be answered by a person who is fitted to answer it. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand." (Emphasis original.) [2]

1. Rogers, The Law of Expert Testimony § 30. (3d ed. 1941).

2. Wigmore, Evidence § 555 (3d ed. 1940), followed in Sinz v. Owens, 33 Cal.2d 749, 205 P.2d 3, 5 (1949) and Startin v. Madsen, 120 Utah 631, 237 P.2d 834, 838 (1951).

In the case at bar, the question is whether Bean and his supporting witnesses possessed peculiar knowledge not ordinarily possessed by the average juror on the particular point at issue, namely, chemical causation of the death of onion seed plants.

Of course, Bean had long experience as a farmer and knew something of "mildew" and "scalding" of onions. However, on direct examination in answer to the question whether he was "familiar generally with the diseases that are found in onion seed and onions," Bean answered only that he was "just fairly familiar." This was the only basis for his expressed opinion that "it was the Dacthal W–75 that caused the damage." Bean had absolutely no prior experience with Dacthal W–75 or any other onion herbicide whatsoever. He concluded that Dacthal W–75 was the cause of the damage simply because he did not know of anything else that could have caused it. Bean's supporting witnesses could claim little or no better qualification on this particular point.

Of course, plaintiff's witness Robert Blass was properly permitted to testify concerning his own 7.7 acre "experimental" field of onions, separate portions of which were treated with the herbicides Pyramin and Dacthal W–75 and one portion of which was not treated with any herbicide. He was properly permitted to testify concerning his observations of the development or failure of the plants in each portion of his "experimental" field. Nevertheless, this witness possessed no special knowledge of the properties of Dacthal W–75. His assertion to the jury that the herbicide Dacthal W–75 caused the damage to the plants in that portion of the field on which it was used was purely suppositional. No proper foundation was laid, nor qualification shown, for the opinion of this witness that the specific herbicide did indeed cause the damage.

Thus, the assertions of these witnesses that the herbicide Dacthal W–75 did indeed cause the failure of Bean's onion seed crop were based, not upon any peculiar knowledge of the chemical composition of this herbicide, its potency, its effects upon weeds and plants and the duration of such effects, but simply upon their lack of knowledge of any other possible agent or condition which might have produced the death of the onion seed plants. In short, these witnesses knew no more about this herbicide than the average juror could be expected to know. The inferential leap from a supposed absence of any other destructive agent or condition to the conclusion that Dacthal W–75 was the precise cause was one which Bean's witnesses were no more qualified to make than the jury. These witnesses gave no peculiar factual aid to the jury upon this question of causation, which was the ultimate issue in the case. Therefore these witnesses were not "experts" even by the majority's own definition, and they should not have been allowed to express their opinion upon the issue of causation. Only witnesses who are expert on the particular point at issue may give their opinion on the ultimate issue in the case.[3]

In this respect, the case of Paisley v. American Zinc Co.[4] is quite pertinent. There the plaintiffs recovered damages to their farmland allegedly caused by emissions from defendant's plant. The appellate court reversed the judgment:

"In this case none of appellees' witnesses testified to any knowledge of the powers, properties or nature of the gases, fumes or smoke that they saw emitted from appellant's plant. The witnesses described a smoke and a yellow smoke at times emitting from the stacks, and some of the witnesses smelled a gas and described a condition of dying and injured vegetation upon the lands and a depreciation in the value of the lands from the year 1917 to the date of trial from $75 to nothing. In this state of the proof

3. Bell, Handbook of Evidence for the Idaho Lawyer 66–67 (1957).

4. 235 Ill.App. 22 (Illinois 1924).

appellees, over the objection of appellant, were permitted to inquire of the witnesses:

'Q. Can you tell where the smoke or gas comes from that causes that? (This refers to effect on person.)

'A. Yes. sir, it comes from the smelter.

'Q. In your judgment, what has caused the depreciation you have testified about?

'A. The smelter.

'Q. In your judgment what has caused this depreciation in the fair cash market value of the Paisley land?

'A. Well, it is because of that fumes from the smelter.'

"Other similar questions were put to appellee's witnesses and answered in a similar manner, to all of which appellant strenuously objected on the ground that the questions called for a pure conclusion of the witness *and sought to make of the witness an expert about matters of which he had no more knowledge than the jury,* and that it was an inquiry as to ultimate facts and invaded the province of the jury.

\*  \*  \*  \*  \*  \*

"In the opinion of this court it was usurping the functions of the jury for the witnesses in this case *to give their opinion as to the effect of any gases and fumes upon vegetation,* and to testify that the depreciation in the value of said property was caused by appellant's smelter.

\*  \*  \*  \*  \*  \*

"In the case at bar, expert testimony would have been competent to show the effect of any gases or fumes shown to emanate from appellant's smelter upon trees, land, shrubbery and vegetation generally, *but the witnesses of appellees had no more information upon that subject than the members of the jury,* and for such witnesses to be permitted to state their opinions and inferences to the jury is merely usurping the functions of the jury and as prejudicial to appellant's cause as though the witnesses had asked the jury to find for the plaintiff, and was error in this case." (Emphases original.)

Similarly, in National Zinc Co. v. Crow,[5] the plaintiff had recovered damages for the loss of certain colts which had been raised on his farm near defendant's smelter. The plaintiff and his supporting witnesses knew nothing of the properties of the smoke emanating from defendant's plant and had made no scientific examination of either the vegetation on the farm or the colts. Their only qualification to give an opinion was that they had also raised colts and could think of no other cause of the colts' deaths. On appeal the court held that the admission of the opinions of these witnesses that the zinc fumes poisoned the colts was prejudicial error, since the average juror was equally well qualified to make this inference of causation. These witnesses were not expert on the matter of chemical poisoning because they were unable to aid the jury in any way on that point.

The case at bar presents an analogous situation. Although Bean and his witnesses knew no more about herbicides than the jury, they were permitted to assert conclusions upon causation essential to the plaintiff's recovery. Farmers were not shown to be experts on chemical herbicides in this case. In general, expert testimony must be limited to the peculiar area of expertise which witnesses possess. The prejudice resulting from a failure to do so in a case like the one at bar consists of the fact that witnesses are permitted in effect to assert to the jury their personal belief or opinion that the plaintiff should recover. The action should be referred back to the trial court for a new trial consonant with this dissent.