The Honorable Edward F. Thicksten State Representative P.O. Box 2019 Alma, Arkansas 72921-2019
Dear Representative Thicksten:
This is in response to your request for an opinion on the following question:
 How may a school board pay teachers the same salary for the 1992-93 school year that the district paid them in 1991-92?
Specifically, you have outlined two possible interpretations of the relevant statutes, and their relation to each other. The first relevant statute, A.C.A. § 6-17-204, enacted in 1983, provides as follows:
 (a) The personnel policies of each school district in effect at the time a teacher's contract is entered into or renewed shall be considered to be incorporated as terms of the contract and shall be binding upon both parties unless changed by mutual consent.
 (b) Any amendments to personnel policies adopted during the term of such contract shall become effective the following July 1. However, these amendments may take place immediately with mutual consent.
The second statute, A.C.A. § 6-17-1506, is a part of the "Teacher Fair Dismissal Act of 1983" and provides that:
 (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the next school year succeeding the date of termination fixed therein, which renewal may be made by an endorsement on the existing contract instrument, unless by May 1 of the contract year, the teacher is notified by the school superintendent that the superintendent is recommending that the teacher's contract not be renewed. . . . [Emphasis added.]
The above provision has been interpreted to result in automatic renewal of the contract on May 1 if the notice is not given.Hilton v. Pine Bluff Public Schools, 295 Ark. 397,748 S.W.2d 648 (1988).[1]
Also relevant to the question is A.C.A. § 6-17-201, a 1987 enactment, which characterizes the teacher salary schedule as a "personnel policy" of the district.
The first interpretation of the statutes is that if a school district wishes to pay teachers the same amount for 1992-93 as it did 1991-92, the district must go through the procedure for amending a "personnel policy" of the district, in this case the teacher salary schedule. See A.C.A. §§ 6-17-201—208. The schedule would presumably be amended and "downshifted" to pay teachers with an additional year experience the same amount they received the previous year. If the amendment is adopted during the current school year, it, according to A.C.A. § 6-17-204, will not become effective until July 1, 1992. At the time it becomes effective, according to this interpretation, it will apply to the 1992-93 contracts, even if the contracts were renewed automatically by virtue of the May 1 deadline set out in A.C.A. §6-17-1506, and even if the personnel policies in effect on May 1, including the old salary schedule, were incorporated as terms of the contract as of that date.
The second possible interpretation of the statutes is that A.C.A. § 6-17-1506, as interpreted by the court, provides for automatic renewal on May 1 if no notice of termination is given. The automatic renewal entitles the teachers to a contract for the same salary and for the same terms as the previous year contract. One of the terms of the contract renewed, according to this interpretation, is the teacher salary schedule which was effective at the time of that contract. This interpretation therefore concludes that if contracts are automatically renewed, the school district is bound to honor the unamended salary schedule, and pay the increments established therein, entitling teachers to a salary increase for an additional year of experience. This interpretation would therefore require either mutual consent of the teachers to the amendment of the salary schedule, so that the amendment would be effective immediately and be incorporated as a term of the new contracts on the May 1 automatic renewal date, or the negotiating of new contracts with the teachers.
It is my opinion that neither one of these interpretations is easily reached, based upon the current statutory language and the Arkansas Supreme Court's holding in Hilton, supra. Although the statutes could possibly be read to allow July 1 amendments to apply to contracts renewed on May 1, the conclusion that the legislature intended such a unilateral amendment must be seriously questioned in light of the intent expressed under Act 224 of 1983 that personnel policies not be changed after contracting with teachers. Traditional contract principles also militate against this interpretation, in the absence of a clearer expression of legislative intent to this effect. On the other hand, it is difficult to conclude that the legislature intended to require mutual consent or new contracts in order for any personnel policy amendments to become effective July 1. This would, in effect, be the result of the second interpretation.
Legislative or judicial action may therefore be indicated if the district wishes to adopt the salary schedule amendment while utilizing the automatic renewal procedure.
It should be noted from the outset that your question does not inquire as to whether it is lawful to pay teachers the same amount in a given year as the previous year. You have inquired merely how such a result can, as a matter of procedure, be achieved under the statutes. We will assume, therefore, that a district contemplating such action will be in compliance with all other potentially relevant laws governing teacher salaries, for example, the required percentage of net current revenue to be paid to teachers under A.C.A. § 6-20-307 and § 6-20-319.[2]
At the time of the adoption of the two relevant acts in 1983, it was not clear that the teacher salary schedule was a "personnel policy" of a school district. This characterization came later, with the adoption of Act 687 of 1987. This office has previously opined, however, that since the adoption of the 1987 act, the teacher salary schedule is to be treated as any other personnel policy of the school district. See Op. Att'y Gen. No. 91-369, a copy of which is enclosed.
It is clear, in my opinion, that A.C.A. §§ 6-17-204 and6-17-1506, which were adopted at the same session of the legislature, if read together to authorize an amendment of a personnel policy of the district which is to become effective on July 1, to take effect and affect contracts which were automatically renewed on May 1, would allow the unilateral modification of a material term of the contract after it has been executed. Some explanation is helpful. Assume that during the current school year an amendment to a personnel policy (not necessarily to the salary schedule, but to any personnel policy) is adopted by the district under the statutory procedure required for amendments to personnel policies. This amendment, because adopted during the term of a current contract, will not become effective until July 1. In the meantime, or even prior to adoption of the amendment,[3] contracts in the district are automatically renewed on May 1. Any amendments effective after this date would amend existing policies which are terms of the renewed contract. These amendments, if not adopted through mutual consent, would be unilateral. The unilateral action would be contrary to both contract principles and the intent of Act 224 of 1983.[4] It has been held that traditional contract principles apply to teacher employment contracts. Helena-WestHelena School District #2 v. Randall, 32 Ark. App. 50,796 S.W.2d 586 (1990). One of these principles is that a contract may be modified, but it is essential that both parties agree to the modification and its terms. Moss v. Allstate Ins. Co.,29 Ark. App. 33, 726 S.W.2d 831 (1989). See also Scottish Union Union National Ins. Co. v. Wilson, 183 Ark 860, 39 S.W.2d 303
(1931); and Associated Seed Growers, Inc. v. Johnson,227 Ark. 235, 297 S.W.2d 934 (1957). Unilateral modification is thus unauthorized. Even if the amended salary schedule is presented to the personnel policies committee as required by law, that law still authorizes the board of directors to adopt the amendment without consent of the committee. See generally A.C.A. §6-17-205. This would amount to a unilateral modification. Additionally, even if the amendment is adopted by May 1, it cannot be effective by May 1, so as to be incorporated into next year's contracts. In fact, on May 1, the old schedule will be incorporated under automatic renewal and, absent the consent of the teachers, the old schedule will be a term of the contract.
On the other hand, under the second interpretation, no personnel policies of a district could be amended during the school year and become effective July 1 if automatic renewal is utilized. If old terms are locked in on May 1, prior to the effective date of any amendments, the amendments cannot operate to change those terms. It is difficult to conclude that the legislature set out a July 1 effective date for policy amendments which are adopted without mutual consent, while still intending to require mutual consent or the renegotiation of contracts.
The problem arises because there are "terms" of the contract, including, presumably, the teacher salary schedule, which are locked in on automatic renewal. A.C.A. § 6-17-1506. On the other hand there are "personnel policies," which were, in the same legislative session, made "terms" of the contract and which are subject to amendment. A.C.A. § 6-17-204. These concepts thus overlap. One statute provides that the "terms" of a previous contract are retained and effectively "locked in" on renewal. The other provides that "personnel policies" which become "terms" of a contract may be amended and become effective July 1, (after the automatic renewal date). The problem is exacerbated by the Supreme Court's holding in Hilton, supra, that automatic renewal is accomplished by operation of law on May 1. The operation and effect of the two dates (May 1 and July 1) are mutually exclusive under this holding.
A reading of these statutes thus reveals conflicting evidences of legislative intent. The statutes cannot be reconciled or employed simultaneously without reaching an outcome that in either case seems contrary in some aspect to other evidences of legislative intent. Of course, there is no prohibition against paying teachers the same salary as last year through mutual consent or the renegotiation of contracts. The only question is whether the legislature intended to require this procedure. This, in my opinion, is a question that can only be satisfactorily resolved through legislative clarification or resort to the judicial process.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
Enclosure
[1] This appears to be the law, as announced by the Supreme Court, despite the fact that the statute provides for renewal "by endorsement on the existing contract instrument." It could be argued that rather than the contract being automatically renewed on May 1, by "operation of law" as the court has held, the statute merely legally binds the district to renew the contract if no notice is given by May 1, which actual date of renewal would be determined by the actual date the endorsement is made, as long as it is made prior to the term or duration of the contract. Under this interpretation, the district could merely wait until after the salary schedule amendment was effective (July 1) to actually "renew" the contract. At that point of renewal, the amended schedule would be incorporated as a term of the contract. This scenario would still present a statutory construction problem, however because on the one hand on May 1 the district is bound to execute a contract containing the same "terms" as last year, and on the other hand the law allows personnel policies in effect at the date of renewal to be incorporated as terms of the contract. This conflict, however, is merely a matter of statutory reconciliation rather than a conflict between the statutes and the contractual rights of teachers. This interpretation, however, appears to be contrary to the interpretation of the Supreme Court that contracts are renewed by operation of law on May 1. See Hilton, supra.
[2] It should be noted, however, that we find no law expressly prohibiting the "freezing" of teacher salaries from one year to the next. While A.C.A. § 6-17-1001 (Cum. Supp. 1991) requires school districts to pay teachers upon a salary schedule which has annual increments for education and experience, it appears that payment based upon an amended schedule would still comply with this language, at least if not amended perpetually to avoid the schedule requirement. The same reasoning would apply to A.C.A. §6-20-319(4)(B). Additionally, the fourteen annual increments for experience discussed in A.C.A. § 6-17-1001 have been opined to create only a goal for school districts and not a requirement.See Op. Att'y Gen. No. 91-366. The problem arises, however, when the "freezing" of salaries is attempted through a personnel policy amendment in connection with automatic renewal.
[3] There is an indication in your request that at least one interpretation is that the amendment to the salary schedule must be "voted" or adopted prior to the May 1, deadline so as to be approved prior to the date of automatic contract renewal. It is my opinion that this action would be of no additional legal effect. Personnel policies which have been adopted but which are not effective at the time of contract renewal do not, under A.C.A. § 6-17-204, become a part of the contract upon renewal. The policy must be "effective" at the time of renewal in order to be incorporated as a term of the contract on renewal. An amendment to the salary schedule adopted during the term of a current contract cannot be effective by May 1, because according to statute it cannot become effective until July 1. On the May 1 renewal date, the terms of the current contract are locked in for the next year, and any amendments effective July 1 will represent an attempt to amend these terms.
[4] The emergency clause of Act 224 of 1983 (A.C.A. § 6-17-204) evidences an intent that school districts not be allowed to change personnel policies after "contracting" with teachers, stating: "It is hereby found and determined by the General Assembly that some school districts change their personnel policies pertaining to teachers after contracting with the teachers; that such practice is unconscionable; and that this Act is necessary to cure such inequity." Act 224 of 1983, Section 4. The emergency clause of an act may be used in determining the intent of the legislature in case of an ambiguity. Farm BureauMut. Ins. Co. of Arkansas v. Wright, 285 Ark. 228,686 S.W.2d 728 (1985); Heath v. Westark Poultry Processing Corp,259 Ark. 141, 531 S.W.2d 953 (1976).